# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

Douglas S. Swatkowski

                Debtor.

_____/

CASE NO. 16-bk-04018-RAC
Chapter 7

**SEACOAST NATIONAL BANK,**

      **Plaintiff,**

**vs.**

**DOUGLAS S. SWATKOWSKI,**

      **Defendant.**

_____/

**Adv. Proc. No. 6:16-ap-00131-RAC**

## AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE

Plaintiff and creditor, SEACOAST NATIONAL BANK ("Plaintiff" or "Seacoast"), as successor in interest to BankFIRST ("BankFIRST"), hereby files its Complaint against DOUGLAS S. SWATKOWSKI (""Swatkowski" or Defendant"), to determine the dischargeability of certain of Defendant's debts to Plaintiff pursuant to 11 U.S.C. § 523(a)(2) & (6), and objecting to the Debtor's discharge pursuant to 11 U.S.C. §727. In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.      On June 17, 2016 (the "Petition Date"), Swatkowski commenced the above- styled Chapter 7 case by the filing of a Voluntary Petition for Relief under the provisions of Chapter 7 of the U.S. Bankruptcy Code, [Doc. 1], in the U.S. Bankruptcy Court for the Middle District of

Florida.

2.      Pursuant to the Notice of Commencement of case under Chapter 7 of the Bankruptcy Code [Doc. 4] dated June 20, 2016, the deadline established for filing Complaint objecting to the discharge of the Debtor pursuant to 11 U.S.C. §727, or to determine dischargeability of certain types of debts, pursuant to 11 U.S.C. §523, was originally September 19, 2016.

3.      Pursuant to this Court's Order of January 23, 2016 [Doc. 48], the deadline established for filing a Complaint objecting to the discharge of the Debtor pursuant to 11 U.S.C. §727, or to determine dischargeability of certain types of debts, pursuant to 11 U.S.C. §523, was extended through February 15, 2017.

4.      Lori Patton has been appointed as the Trustee over the case pursuant to 11 U.S.C. § 701.

5.      Plaintiff is a creditor of the Defendant, as the successor in interest to BankFIRST pursuant to Articles of Merger of the BankShares, Inc. (a Florida corporation) with and into Seacoast Banking Corporation of Florida (a Florida Corporation), filed with the Florida Secretary of State on September 30, 2014, and therefore has standing to file this action.

6.      This Complaint commences an adversary proceeding pursuant to Fed. R. Bankr. P. 7001 *et seq.*

7.      Jurisdiction over this matter and over the Defendant is proper in this district, pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523.

8.      Venue over this matter is proper in this district, pursuant to 28 U.S.C. § 1409.

9.      This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 157(b)(2).

## FACTUAL BACKGROUND

### The BankFIRST Loans

10.    Plaintiff is the holder of claims arising from Defendant's execution and delivery of certain promissory notes and guarantees, and resulting deficiency final judgment in the amount of $566,773.56 plus postjudgment interest, entered on November 30, 2015, and amended on December 7, 2015 [Claim 1].

11.    Beginning in 2011, Swatkowski entered into a series of business loans with BankFIRST, under which he was either a borrower or guarantor [Claim 1, Exhibit A].

12.    In 2012, Swatkowski was unable to make payments on the BankFIRST loans, and entered into a series of refinancing agreements (the "Refinancing") [Claim 1, Exhibit A].

13.    After numerous attempts at Refinancing, Swatkowski was unable to meet his obligations to BankFIRST, and on August 29, 2014, BankFIRST filed suit against, *inter alia*, Swatkowski, seeking recovery under its notes and guarantees and foreclosure of its mortgage. A true and correct copy of the Complaint is attached hereto as Exhibit "A".

14.    Concurrently with the filing of its Complaint, BankFIRST also filed its lis pendens against, *inter alia*, Swatkowski, which was recorded at O.R. Book 10799, Page, 1374, Public Records of Orange County, Florida.  A true and correct copy of the Notice of Lis Pendens is attached hereto as Exhibit "B".

15.    Swatkowski was served with the BankFIRST Complaint on September 30, 2014, as evidenced by Certificate of Service attached hereto as Exhibit "C."

16.    On October 30, 2014, Swatkowski filed his answer to the BankFIRST Complaint, as evidenced by Answer attached hereto as Exhibit "D."

17.     On July 15, 2015, the Court entered its Final Judgment of Foreclosure, attached hereto as Exhibit "E", in the amount of $838,673.94, scheduling the real property for sale, and reserving rights to enter a deficiency judgment after the sale was concluded.

18.     After the real property sold for $289,817.60, Seacoast moved for entry of a deficiency judgment on the notes and guarantees, resulting in the Deficiency Final Judgment against Swatkowski in the amount of $566,773.56 plus postjudgment interest, entered on November 30, 2015, and amended on December 7, 2015 [Claim 1].

**The Real Property Sale & Non-Identity Affidavit**

19.     Prior to January 1, 2012 and continuing until approximately August 2014, Swatkowski and his wife Kimberly Swatkowski owned a residence located at 11425 West Lake Butler Road, Windermere, FL 34786, which they occupied as their homestead.

20.     On January 27, 2014, however, Kimberly Swatkowski purchased in her name alone a separate residence located at 5624 West Lake Butler Road, Windermere, FL 34786.

21.     On or about August 8, 2014, Swatkowski and his wife Kimberly vacated the real property located at 11425 West Lake Butler Road, Windermere, FL 34786, in favor of a rental property and, ultimately, in favor of the residence held in the name of Kimberly Swatkowski alone.

22.     On August 8, 2014, Swatkowski and his wife Kimberly abandoned the property located at 11425 West Lake Butler Road, Windermere, FL 34786, as well as any intent to assert any claim of homestead with respect to that property.

23.     Therefore, after August 8, 2014, the property located at 11425 West Lake Butler Road, Windermere, FL 34786 no longer held homestead exempt status.

24.     On November 3, 2014, Swatkowski and his wife Kimberly closed upon the sale of the property located at 11425 West Lake Butler Road, Windermere, FL 34786.

25.     As a condition of the sale, however, Swatkowski executed and delivered to the closing agent a Non-Identity Affidavit, wherein he swore under oath that there were no pending claims or lawsuits against him. A true and correct copy of the Non-Identity Affidavit, recorded at O.R. Book 10831, Page 2191, Public Records of Orange County, Florida, is attached hereto as Exhibit "F".[1]

26.     At the time Swatkowski made the representations in his sworn Non-Identity Affidavit, he knew them to be false, and made them with the intent of deceiving the closing agent (who held a fiduciary obligation to BankFIRST as a creditor) so that the closing agent would disburse the sale proceeds without further inquiry or arranging for payment of the BankFIRST debt.

27.     The closing agent, acting as a fiduciary for Swatkowski's creditors, including BankFIRST, justifiably relied on these representations when it agreed to release the sale proceeds without making payment to Swatkowski's creditors, and BankFIRST suffered significant loss and damage proximately caused by these representations as it would have had the opportunity to make claim to Swatkowski's share of the closing proceeds as Swatkowski's creditor, because Swatkowski previously abandoned his claim to the homestead exemption.

28.     These actions and omissions by Swatkowski also constitute the independent tort of conversion of assets that would have been available to BankFIRST as a creditor.

29.     Swatkowski willfully and intentionally deprived Plaintiff of its rightful claim to the sales proceeds, and the Defendant willfully and intentionally converted the proceeds to his personal benefit and use.

---

[1] Although the Non-Identity Affidavit signed by the Debtor incorrectly identifies him in the feminine (as "her"), this is clearly a scrivener's error and should properly read in the masculine as "his". The Debtor is the Affiant named in the document, and there is no other party named or referenced therein.

**The Sale of the Former Residence - 11425 West Lake Butler Road**

30.    As of August 8, 2014, when Swatkowski and his wife Kimberly vacated the real property located at 11425 West Lake Butler Road, Windermere, FL 34786, in favor of a rental property and, ultimately, in favor of the residence held in the name of Kimberly Swatkowski alone, Swatkowski and Kimberly Swatkowski abandoned any homestead interest with respect to that property.

31.    More particularly, as of August 8, 2014, Kimberly Swatkowski had already purchased the property located at 5624 West Lake Butler Road, Windermere, FL 34786 in her name alone, where both the Debtor and Kimberly Swatkowski intended to reside, and entered into a rental agreement as landlords for the real property located at 11425 West Lake Butler Road, Windermere, FL 34786.

32.    After August 8, 2014, neither the Debtor nor Kimberly Swatkowski had any intention of returning to reside at the property located at 11425 West Lake Butler Road, Windermere, FL 34786.

33.    When Swatkowski and his wife Kimberly closed upon the sale of the property located at 11425 West Lake Butler Road, Windermere, FL 34786 on November 3, 2014, therefore, they did not have a homestead claim available to them with respect to the sale proceeds.

34.    Upon the closing of the sale of the property located at 11425 West Lake Butler Road, Windermere, FL 34786 on November 3, 2014, they deposited sale proceeds of approximately $485,000 into an account titled in the name of Douglas and Kimberly Swatkowski as tenants by the entireties. See, Debtor's original Statement of Financial Affairs [Doc. 1, pg. 48], Question 18.

35.    In his original Statement of Financial Affairs filed on June 17, 2016 [Doc. 1, pg. 48, Question 18], the Debtor falsely stated that "100% of proceeds [from the sale of 11425 West Lake

Butler Road, Windermere, FL 34786] used to purchase 5624 W. Lake Butler Blvd., Windermere which is deed in wife's name only".

36.     At the 341 creditors meeting held on July 20, 2016, Swatkowski was confronted about this falsehood, and asked directly how it could be possible that the proceeds from the sale of 11425 West Lake Butler Road, Windermere, FL 34786 on November 3, 2014 could be used to purchase 5624 W. Lake Butler Blvd., Windermere (in wife's name only) on January 27, 2014 – 10 months before the sale.  Swatkowski the testified at the 341 meeting that all of the $485,000 in proceeds were used to construct improvements to the real property located at 5624 W. Lake Butler Blvd., Windermere (titled in wife's name only).

37.     On September 9, 2016, Swatkowski then filed an Amendment to Statement of Financial Affairs [Doc. 20], wherein he amended his Statement as follows:

> Doug and Kim Swatkowski netted $405,000 from the sale of their former homestead property.  $100,000 was paid to Mr. and Mrs. Swatkowski in July 2014 and $305,000 was paid to Mr. and Mrs. Swatkowski in November 2014.  All proceeds from the sale were deposited into Mr. and Mrs. Swatkowski's tenants by entirety account.  $175,000 of this amount was paid to the IRS for 2013 income taxes.  The remaining $230,000 was used to pay for living expenses and to pay for home improvements to the home at 5624 W. Lake Butler.  The 5624 W. Lake Butler property is the Debtor's residence but is titled solely in Kim Swatkowski's name.

38.     Upon information and belief, the transfers of the sales proceeds continued though the year 2015 when the home at 5624 W. Lake Butler was being renovated, and possibly into the year 2016.

39.     The transfers made by Swatkowski of his separate interest in the sales proceeds from 11425 West Lake Butler Road, Windermere, FL 34786 to his wife Kimberly alone, or for Kimberly's sole and direct benefit, were made while the BankFIRST debt was in default and outstanding, were made with the intent to hinder, delay or defraud BankFIRST in its collection efforts, and rendered Swatkowski insolvent.

**The Personal Tort / Consortium Claims**

40.    Sometime on or about 2012, while the BankFIRST debt was outstanding and unpaid, Kimberly Swatkowski was the subject of an undisclosed injury or bodily harm arising as a result of a personal tort claim.

41.    The exact nature of the claim is currently unknown but will be determined upon further discovery.   The settlement of the claim is identified in this Court's previous Order Granting Motion for Protective Order field in the above-styled case [Doc. 29].

42.    Kimberly Swatkowski has asserted that she has long lasting and permanent injuries arising as a result of the personal tort claim that render her unable to perform her martial functions as the wife of Swatkowski.

43.    When questioned about whether he had any claim or interest related to his wife's personal tort claim, Swatkowski originally testified that he did not have any related claim, and had no knowledge of the personal tort claim.

44.    After Swatkowski's 2004 examination, however, when Seacoast asked for production of documents from the attorneys who handled the claims and the settlement, Swatkowski admitted that, as a condition of the settlement reached between Kimberly Swatkowski and the alleged tortfeasor, he was required to sign a release, and in fact signed a release as a condition of the settlement.

45.    Based upon the foregoing, and upon information and belief, Swatkowski had a loss of consortium or similar claim related to the personal tort claim of his wife Kimberly, but the parties chose to structure the settlement of all claims to provide for payment to Kimberly alone, in order to avoid Swatkowski's creditors, including BankFIRST.

46. Payments under the settlement agreement were made in installments through December 2015, all at times when Swatkowski was indebted to BankFIRST (and subsequently Seacoast) and was in default.

47. The transfers made by Swatkowski of his consortium claim or similar interest in the settlement proceeds to his wife Kimberly alone, or for Kimberly's sole and direct benefit, were made while the BankFIRST / Seacoast debt was in default and outstanding, were made with the intent to hinder, delay or defraud BankFIRST / Seacoast in its collection efforts, and rendered Swatkowski insolvent.

## COUNT I:
## DETERMINATION OF DISCHARGEABILITY
## UNDER 11 U.S.C. § 523(a)(2) – MISREPRESENTATION – NON-IDENTITY AFFIDAVIT

48. Paragraphs 1 through 29 of this Complaint are hereby incorporated as fully as if restated herein.

49. Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge pursuant to 11 U.S.C. § 727 does not discharge an individual from any debt for money, property, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

50. As further described above, the representation made by the Defendant regarding the fact that he had no claims pending against him at the time of closing was made with false pretense and was a false representation designed to deprive Seacoast (formerly BankFIRST) of its claim to the sale proceeds.

51. The resulting debt is not dischargeable pursuant to 11 U.S.C. §523(a)(2).

WHEREFORE, Plaintiff, Seacoast National Bank, respectfully requests that it have the following relief:

A.    That summons issue;

B.    For all damages, both special and general, as Plaintiff may prove at trial;

C.    That the Court Order that a portion or all of the Defendant's indebtedness to Plaintiff be non-dischargeable;

D.    That all costs be taxed against Defendant;

E.    That interest accrue on the outstanding judgment at the highest amount allowed by law; and

F.    That the Court grant such other and further relief as it deems just and equitable.

## COUNT II:
## DETERMINATION OF DISCHARGEABILITY
## UNDER 11 U.S.C. § 523(a)(6) – NON-IDENTITY AFFIDAVIT

52.    Paragraphs 1 through 29 of this Complaint are hereby incorporated as fully as if restated herein.

53.    Pursuant to 11 U.S.C. § 523(a)(6), a discharge pursuant to 11 U.S.C. § 727 does not discharge an individual from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

54.    As further described above, the acts and omissions of the Defendant caused willful and malicious injury to the property of Plaintiff.

55.    The resulting debt is not dischargeable pursuant to 11 U.S.C. §523(a)(6).

WHEREFORE, Plaintiff, Seacoast National Bank, respectfully requests that it have the following relief:

A.    That summons issue;

B.    For all damages, both special and general, as Plaintiff may prove at trial;

C.    That the Court Order that a portion or all of the Defendant's indebtedness to Plaintiff be non-dischargeable;

D.    That all costs be taxed against Defendant;

E.    That interest accrue on the outstanding judgment at the highest amount allowed by law; and

F.    That the Court grant such other and further relief as it deems just and equitable.

**COUNT III:**
**DETERMINATION OF DISCHARGEABILITY**
**UNDER 11 U.S.C. § 523(a)(2) – FRAUDULENT CONVEYANCE – REAL**
**ESTATE SALES PROCEEDS**

56.    Paragraphs 1 through 39 of this Complaint are hereby incorporated as fully as if restated herein.

57.    Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge pursuant to 11 U.S.C. § 727 does not discharge an individual from any debt for money, property, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

58.    When the Debtor transferred his portion of the real estate sale proceeds to his wife or for his wife's sole and direct benefit, he did so with actual intent to hinder, delay or defraud his creditors, including BankFIRST.

59.    When the Debtor transferred his real estate sale proceeds to his wife or for his wife's sole and direct benefit, he did not receive reasonably equivalent value in exchange for the transfer.

60.    When the Debtor transferred his real estate sale proceeds to his wife or for his wife's sole and direct benefit, he intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay as they became due.

61.     When the Debtor transferred his real estate sale proceeds to his wife or for his wife's sole and direct benefit, he was insolvent.

62.     Accordingly, the Debtor's fraudulent conveyance or his real estate sale proceeds to his wife or for his wife's sole and direct benefit is avoidable pursuant to 11 U.S.C. §548 and §§726.105 and 726.106, *Florida Statutes*.

63.     As recognized by the United States Supreme Court in *Husky International Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016), the term "actual fraud" in Section 523(a)(2)(A) of the Bankruptcy Code encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation by a debtor.  See also, *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), adopted by the United States Supreme Court in *Husky*.

64.     Recently, the Eleventh Circuit has also ruled that, although no Florida court has previously recognized the cause of action for aiding and abetting fraud, the Florida courts have assumed that the cause of action exists and therefore, the Eleventh Circuit has recognized this cause of action in Florida.  *Chang v J.P. Morgan Bank*, 2017 WL 65371 (11th Cir. 2017).

65.     Accordingly, the resulting debt arising from the Debtor's fraudulent conveyance of his real estate sale proceeds to his wife or for his wife's sole and direct benefit is not dischargeable pursuant to 11 U.S.C. §523(a)(2).

WHEREFORE, Plaintiff, Seacoast National Bank, respectfully requests that it have the following relief:

A.     That summons issue;

B.     For all damages, both special and general, as Plaintiff may prove at trial;

C.     That the Court Order that a portion or all of the Defendant's indebtedness to Plaintiff be non-dischargeable;

D.     That all costs be taxed against Defendant;

E.    That interest accrue on the outstanding judgment at the highest amount allowed by law; and

F.    That the Court grant such other and further relief as it deems just and equitable.

### COUNT IV:
### DETERMINATION OF DISCHARGEABILITY
### UNDER 11 U.S.C. § 523(a)(2) – FRAUDULENT CONVEYANCE –
### CONSORTIUM / PERSONAL TORT CLAIM

66.    Paragraphs 1 through 13 and 40-47 of this Complaint are hereby incorporated as fully as if restated herein.

67.    Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge pursuant to 11 U.S.C. § 727 does not discharge an individual from any debt for money, property, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

68.    When the Debtor transferred his portion of the personal tort / consortium claim (and its proceeds) to his wife or for his wife's sole and direct benefit, he did so with actual intent to hinder, delay or defraud his creditors, including BankFIRST.

69.    When the Debtor transferred his portion of the personal tort / consortium claim (and its proceeds) to his wife or for his wife's sole and direct benefit, he did not receive reasonably equivalent value in exchange for the transfer.

70.    When the Debtor transferred his portion of the personal tort / consortium claim (and its proceeds) to his wife or for his wife's sole and direct benefit, he intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay as they became due.

71.    When the Debtor transferred his portion of the personal tort / consortium claim (and its proceeds) to his wife or for his wife's sole and direct benefit, he was insolvent.

72.     Accordingly, the Debtor's fraudulent conveyance or his portion of the personal tort / consortium claim (and its proceeds) to his wife or for his wife's sole and direct benefit is avoidable pursuant to 11 U.S.C. §548 and §§726.105 and 726.106, *Florida Statutes*.

73.     As recognized by the United States Supreme Court in *Husky International Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016), the term "actual fraud" in Section 523(a)(2)(A) of the Bankruptcy Code encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation by a debtor.  See also, *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), adopted by the United States Supreme Court in *Husky*.

74.     Recently, the Eleventh Circuit has also ruled that, although no Florida court has previously recognized the cause of action for aiding and abetting fraud, the Florida courts have assumed that the cause of action exists and therefore, the Eleventh Circuit has recognized this cause of action in Florida.  *Chang v J.P. Morgan Bank*, 2017 WL 65371 (11th Cir. 2017).

75.     Accordingly, the resulting debt arising from the Debtor's fraudulent conveyance of his portion of the personal tort / consortium claim (and its proceeds) to his wife or for his wife's sole and direct benefit is not dischargeable pursuant to 11 U.S.C. §523(a)(2).

WHEREFORE, Plaintiff, Seacoast National Bank, respectfully requests that it have the following relief:

A.     That summons issue;

B.     For all damages, both special and general, as Plaintiff may prove at trial;

C.     That the Court Order that a portion or all of the Defendant's indebtedness to Plaintiff be non-dischargeable;

D.     That all costs be taxed against Defendant;

E.     That interest accrue on the outstanding judgment at the highest amount allowed by law; and

F.      That the Court grant such other and further relief as it deems just and equitable.

## COUNT V:
## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)

76.     Paragraphs 1 through 47 of this Complaint are hereby incorporated as fully as if restated herein.

77.     Pursuant to 11 U.S.C. §727(a)(1), the Court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed… property of the debtor, within one year before the date of the filing of the petition."

78.     Pursuant to Section 727(a)(3) of the Code, the Court shall grant a debtor a discharge unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information […] from which debtor's financial condition or business transactions may be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"

79.     Pursuant to Section 727(a)(4) of the Code, the Court shall grant a debtor a discharge unless "the debtor knowingly or fraudulently, in or in connection with the case made a false oath or account or presented or used a false claim[.]"

80.     Pursuant to Section 727(c)(1) of the Code, "the trustee, a creditor, or the United States trustee may object to granting of a discharge under subsection (a) of this section."

81.     Seacoast objects to the discharge of Debtor pursuant to Section 727(a)(1) of the Code as Swatkowski transferred property of the Debtor to his wife Kimberly with the intent to delay, hinder and defraud his creditors, including Seacoast.

82. Seacoast further objects to the discharge of Debtor pursuant to Section 727 (a)(3) and (a)(4) of the Code as Swatkowski failed to disclose accurate information on his Petition and Schedules regarding the proceeds from sale of 11425 West Lake Butler Road, Windermere, FL 34786 and his interest in the settlement of the personal tort / consortium claim involving his spouse.

83. Swatkowski possessed the capacity to know that he needed to disclose all of his financial information on his Petition, but he instead concealed such information, and/or made false statements regarding his financial information, on his Petition.

WHEREFORE, Plaintiff, Seacoast National Bank, respectfully requests that it have the following relief:

A. That summons issue;

B. That the Court Order that the Debtor be denied a discharge in his bankruptcy case, pursuant to 11 U.S.C. §727;

C. That all costs be taxed against Defendant;

D. That the Court grant such other and further relief as it deems just and equitable.

Respectfully submitted,

/s/  Jon E. Kane
JON E. KANE, ESQUIRE
Florida Bar No. 814202
**MATEER & HARBERT, P.A.**
225 E. Robinson Street, Suite 600
Orlando, Florida 32801
Telephone: (407) 425-9044
Facsimile: (407) 423-2016
jkane@mateerharbert.com
Attorneys For Creditor, Seacoast National Bank

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic transmission via the Court's Notice of Electronic Filing to those parties who appear on the CM/ECF Service List and/or via first class U.S. Mail, this 15th day of February, 2017.

/s/ Jon E. Kane
JON E. KANE, ESQUIRE
Florida Bar Number 814202

4826-2652-1923, v. 1

Filing # 17685893 Electronically Filed 08/29/2014 01:22:09 PM

IN THE CIRCUIT COURT FOR THE
NINTH JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO.

BANKFIRST,

     Plaintiff,

v.

CENTRAL SWEEPING SERVICE,
INC., a Florida corporation;
CENTRAL SWEEPING & MILLING,
LLC, a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, LLC,
a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, individually; and
UNKNOWN TENANT in possession;

     Defendants.        /

## COMPLAINT

Plaintiff, BankFIRST (hereinafter "BankFIRST"), by and through their undersigned attorneys, brings its Complaint against Defendants, CENTRAL SWEEPING SERVICE, INC., a Florida corporation ("CENTRAL SWEEPING"); CENTRAL SWEEPING & MILLING, LLC, a Florida limited liability company ("CENTRAL S&M"); DOUGLAS S. SWATKOWSKI, LLC, a Florida limited liability company ("SWATKOWSKI LLC"); DOUGLAS S. SWATKOWSKI, individually ("SWATKOWSKI"); and UNKNOWN TENANT in possession; and alleges as follows:

## GENERAL ALLEGATIONS

1.    This is an action in which damages are in excess of Fifteen Thousand Dollars ($15,000.00) exclusive of interest, costs and attorneys' fees.

2.    Plaintiff, BankFIRST, is a Florida banking corporation.


EXHIBIT
A

3.    Defendant, CENTRAL SWEEPING, is a Florida corporation, whose principal place of business is 416 E. Bay Street, Winter Garden, FL 34787.

4.    Defendant, CENTRAL S&M, is a Florida limited liability company, whose principal place of business is 416 E. Bay Street, Winter Garden, FL 34787.

5.    Defendant, SWATKOWSKI, LLC, is a Florida limited liability company, whose principal place of business is 416 E. Bay Street, Winter Garden, FL 34787.

6.    Defendant, SWATKOWSKI, is an individual whose principal place of residence is 5624E Lake Butler Blvd., Windermere, FL 34786.

## 792 LOAN

7.    On or about June 27, 2011, CENTRAL SWEEPING executed and delivered to BankFIRST a Promissory Note ("792 Note") in the principal sum of $200,000.00. A true and correct copy of said 792 Note is attached hereto as **Exhibit 1**.

8.    On or about June 27, 2011, CENTRAL SWEEPING executed and delivered to BankFIRST a Business Loan Agreement ("792 Loan Agreement") in the principal sum of $200,000.00. A true and correct copy of said Loan Agreement is attached hereto as **Exhibit 2**.

9.    On June 27, 2011, CENTRAL SWEEPING, as Borrower and CENTRAL SWEEPING and CENTRAL S&M, as Grantors, executed and delivered to BankFIRST a Commercial Security Agreement ("792 Security Agreement") in the principal sum of $200,000.00 granting a security interest in the collateral described below. A true and correct copy of the 792 Security Agreement is attached hereto as **Exhibit 3.**

All Inventory, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral Section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(the "792 Collateral").

10.   To further secure repayment of the 792 Note owed by CENTRAL SWEEPING, on or about June 27, 2011, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 792 Note dated June 27, 2011.  A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 4.**

11.   To further secure repayment of the 792 Note owed by CENTRAL SWEEPING, on or about June 27, 2011, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 792 Note dated June 27, 2011.  A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 5.**

12.   On about July 1, 2012, CENTRAL SWEEPING executed and delivered to BankFIRST a Change in Terms Agreement ("792 First Renewal Note") in the principal sum of

$200,000.00. A true and correct copy of the 792 First Renewal Note is attached hereto as **Exhibit 6.**

13.     To further secure repayment of the 792 First Renewal Note owed by CENTRAL SWEEPING, on or about July 1, 2012, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 792 First Renewal Note dated July 1, 2012. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 7.**

14.     To further secure repayment of the 792 First Renewal Note owed by CENTRAL SWEEPING, on or about July 1, 2012, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 792 First Renewal Note dated July 1, 2012. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 8.**

15.     To further secure repayment of the 792 First Renewal Note owed by CENTRAL SWEEPING, on or about July 1, 2012, CENTRAL SWEEPING executed and delivered to BankFIRST a Landlord's Release ("Landlord's Release") consenting to BankFIRST'S security interest in and to all inventory, accounts, equipment and general intangibles belonging to or in the name of CENTRAL S&M. A true and correct copy of the Landlord's Release is attached hereto as **Exhibit 9.**

16.     On or about November 1, 2012, CENTRAL SWEEPING executed and delivered to BankFIRST a Change in Terms Agreement ("792 Second Renewal Note") in the principal sum of $200,000.00. A true and correct copy of the 792 Second Renewal Note is attached hereto as **Exhibit 10.**

17.     To further secure repayment of the 792 Second Renewal Note owed by CENTRAL SWEEPING, on or about November 1, 2012, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 792 Second

Renewal Note dated November 1, 2012. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 11.**

18.     To further secure repayment of the 792 Second Renewal Note owed by CENTRAL SWEEPING, on or about November 1, 2012, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 792 Second Renewal Note dated November 1, 2012. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 12.**

19.     On November 1, 2013, CENTRAL SWEEPING executed and delivered to BankFIRST a Promissory Note ("792 Third Renewal Note") in the principal sum of $200,000.00. A true and correct copy of the 792 Third Renewal Note is attached hereto as **Exhibit 13.**

20.     To further secure repayment of the 792 Third Renewal Note owed by CENTRAL SWEEPING, on or about November 1, 2013, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 792 Third Renewal Note dated November 1, 2013. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 14.**

21.     To further secure repayment of the 792 Third Renewal Note owed by CENTRAL SWEEPING, on or about November 1, 2013, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 792 Third Renewal Note dated November 1, 2013. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 15.**

22.     On February 1, 2014, CENTRAL SWEEPING executed and delivered to BankFIRST a Change in Terms Agreement ("792 Fourth Renewal Note") in the principal sum of

$200,000.00. A true and correct copy of the 792 Fourth Renewal Note is attached hereto as **Exhibit 16.**

23.    To further secure repayment of the 792 Fourth Renewal Note owed by CENTRAL SWEEPING, on or about February 1, 2014, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 792 Fourth Renewal Note dated February 1, 2014. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 17.**

24.    To further secure repayment of the 792 Fourth Renewal Note owed by CENTRAL SWEEPING, on or about February 1, 2014, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 792 Fourth Renewal Note dated February 1, 2014. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 18.**

25.    To further secure repayment of the 792 Fourth Renewal Note and the 793 Note described hereinbelow, owed by CENTRAL SWEEPING, on or about February 1, 2014, CENTRAL SWEEPING executed and delivered to BankFIRST a Cross-Collateralization and Cross-Default Agreement ("Cross-Collateralization Agreement"). A true and correct copy of the Cross-Collateralization Agreement is attached hereto as **Exhibit 19.**

26.    On or about February 1, 2014, SWATKOWSKI, LLC executed and delivered to BankFIRST a Mortgage ("792 Mortgage") in the principal sum of $200,000.00. The Mortgage was recorded on March 5, 2014 in Official Records Book 10712 Page 1483 in the Public Records of Orange County, Florida. A true and correct copy of the 792 Mortgage is attached hereto as **Exhibit 20.**

27.     BankFIRST owns and holds the 792 Note  in the amount of $200,000.00 dated 6/27/11; 792 Security Agreement dated 6/27/11; Swatkowski Guaranty dated 6/27/11; Central S&M Guaranty dated 6/27/11; 792 First Renewal Note in the principal sum of $200,000.00 dated 7/1/12; Swatkowski Guaranty dated 7/1/12; Central S&M Guaranty dated 7/1/12; Landlord's Release dated 76/1/12; 792 Second Renewal Note in the principal amount of $200,000.00 dated 11/1/12; Swatkowski Guaranty dated 11/1/12; Central S&M Guaranty dated 11/1/12; 792 Third Renewal Note in the principal amount of $200,000.00 dated 11/1/13; Swatkowski Guaranty dated 11/1/13; Central S&M Guaranty dated 11/1/13; Cross-Collateralization Agreement dated 2/1/14; and 792 Mortgage, all hereinafter referred to as the "792 Loan Documents".

28.     To further secure repayment of the obligation owed by CENTRAL SWEEPING, on April 15, 2011, BankFIRST filed its UCC-1 Financing Statement with the Florida Dept. of State, Docket No. 201104420870, recorded on April 15, 2011 in OR Book 10200 Page 2490 Orange County Public Records, thereby perfecting its first priority security interest in the property described therein, which includes the following Collateral of CENTRAL SWEEPING:

> All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing: all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds.)

(the "Central Sweeping Collateral").  A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit 21.**

29.     To further secure repayment of the obligation owed by CENTRAL SWEEPING, on July 5, 2011, BankFIRST filed its UCC-1 Financing Statement with the Florida Dept. of State, Docket No. 201104889844, thereby perfecting its first priority security interest in the

property described therein, which includes the following Collateral of CENTRAL SWEEPING and CENTRAL S&M:

> All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds); including specifically, but not limited to one 2009 SM80CT Tractor/Trailer Sweeper Serial No. 909018, together with all substitutions and replacements thereto, all accessions and accessories added to or used in connection with said equipment.

(the "Central Sweeping and Central S&M Collateral").  A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit 22.**

30.     To further secure repayment of the obligation owed by CENTRAL SWEEPING, on July 5, 2011, BankFIRST filed its UCC-1 Financing Statement with the Florida Dept. of State, Docket No. 201104889852, thereby perfecting its first priority security interest in the property described therein, which includes the following Collateral of CENTRAL SWEEPING and CENTRAL S&M:

> All Inventory, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing: all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

(the "Central Sweeping and Central S&M Collateral").  A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit 23.**

31.     CENTRAL SWEEPING has defaulted under the 792 Loan Documents by virtue of its failure to make payments due under the 792 Loan Documents on March 1, 2014 or any payments due thereafter.

32.    BankFIRST declares the full amount payable under the 792 Loan Documents to be due.

33.    BankFIRST is entitled to foreclose the lien of its 792 Loan Documents on the Collateral against CENTRAL SWEEPING and CENTRAL S&M named herein.

### 793 LOAN

34.    On or about June 27, 2011, CENTRAL SWEEPING executed and delivered to BankFIRST a Promissory Note ("793 Note") in the principal sum of $309,190.35. A true and correct copy of said 793 Note is attached hereto as **Exhibit 24.**

35.    On or about June 27, 2011, CENTRAL SWEEPING executed and delivered to BankFIRST a Business Loan Agreement ("793 Loan Agreement") in the principal sum of $309,190.35. A true and correct copy of said 793 Loan Agreement is attached hereto as **Exhibit 25**.

36.    On or about June 27, 2011, CENTRAL SWEEPING  executed and delivered to BankFIRST a Commercial Security Agreement ("793 Security Agreement") in the principal sum of $309,190.35, granting a security interest in the collateral described below. A true and correct copy of said 793 Security Agreement is attached hereto as **Exhibit 26.** True and correct copies of Certificates of Title for the vehicles listed below are attached hereto as **Composite Exhibit 27.**

    2007 Freightliner Truck (VIN 1FVACXCS17HX87574)
    2007 Freightliner Truck (VIN 1FVACXCS37HX87575)
    2007 Freightliner Truck (VIN 1FVACXCS47HX58280)
    2006 GMC TK (VIN J8DB4B16067024096)
    2003 Sterling TK (VIN 49HAADBV93DK21061)
    2003 Sterling TK (VIN 49HAADBV03DK21062)
    2000 GMC Truck (VIN J8DE5B146Y7900097)

In addition, the word Collateral also includes all the following:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral Section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(the "793 Collateral").

37.    To further secure repayment of the obligation owed by CENTRAL SWEEPING, on or about June 27, 2011, CENTRAL SWEEPING and CENTRAL S&M executed and delivered to BankFIRST a Commercial Security Agreement ("Second 793 Security Agreement") in the principal sum of $309,190.35, granting a security interest in collateral described below.  A true and correct copy of said Second 793 Security Agreement is attached hereto as **Exhibit 28**.

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles, including specifically, but not limited to one 2009 SM80CT Trailer Sweeper Serial No. 909018, together with all substitutions and replacements thereto, all accessories added to or used in connection with such equipment.

In addition, the word Collateral also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral Section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(the "793 Additional Collateral").

38.    To further secure repayment of the 793 Note owed by CENTRAL SWEEPING, on or about June 27, 2011, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 793 Note dated June 27, 2011. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 29.**

39.    To further secure repayment of the 793 Note owed by CENTRAL SWEEPING, on or about June 27, 2011, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 793 Note dated June 27, 2011. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 30.**

40.    On January 23, 2014, CENTRAL SWEEPING executed and delivered to BankFIRST a Change in Terms Agreement ("793 Renewal Note") in the principal sum of $114,648.67. A true and correct copy of the 793 Renewal Note is attached hereto as **Exhibit 31.**

41.    To further secure repayment of the 793 Renewal Note owed by CENTRAL SWEEPING, on or about January 23, 2014, SWATKOWSKI executed and delivered to

11

BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 793 Renewal Note dated January 23, 2014. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 32.**

42. To further secure repayment of the 793 Renewal Note owed by CENTRAL SWEEPING, on or about January 23, 2014, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 793 Renewal Note dated January 23, 2014. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 33.**

43. BankFIRST owns and holds the 793 Note in the principal sum of $309,190.35 dated 6/27/11; 793 Loan Agreement dated 6/27/11; 793 Security Agreement dated 6/27/11; Second 793 Security Agreement dated 6/27/11; Swatkowski Guaranty dated 6/27/11; Central S&M Guaranty dated 6/27/11; 793 Renewal Note in the principal sum of $114,648.67 dated 1/23/14; Swatkowski Guaranty dated 1/23/14; and Central S&M Guaranty dated 1/23/14, all hereinafter referred to as the "793 Loan Documents".

44. To further secure repayment of the obligation owed by CENTRAL SWEEPING, on January 24, 2013, BankFIRST filed its UCC-1 Financing Statement with the Florida Dept. of State, Docket No. 201308297910, thereby perfecting its first priority security interest in the property described therein, which includes the following Collateral of CENTRAL SWEEPING and CENTRAL S&M:

> All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds.)

20913343 v1

(the "Central Sweeping Collateral").  A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit 34.**

45.    CENTRAL SWEEPING has defaulted under the 793 Loan Documents by virtue of its failure to make payments due under the 793 Loan Documents on March 1, 2014 or any payments due thereafter.

46.    BankFIRST declares the full amount payable under the 793 Loan Documents to be due.

47.    BankFIRST is entitled to foreclose the lien of its 793 Loan Documents on the Collateral against CENTRAL SWEEPING and CENTRAL S&M named herein.

## 901 LOAN

48.    On or about November 28, 2011 CENTRAL S&M executed and delivered to BankFIRST a Promissory Note ("901 Note") in the principal sum of $50,000.00.  A true and correct copy of said 901 Note is attached hereto as **Exhibit 35.**

49.    On or about November 28, 2011, CENTRAL S&M executed and delivered to BankFIRST a Business Loan Agreement ("901 Loan Agreement") in the principal sum of $50,000.00. A true and correct copy of said 793 Loan Agreement is attached hereto as **Exhibit 36**.

50.    On or about November 28, 2011, CENTRAL S&M executed and delivered to BankFIRST a Commercial Security Agreement ("901 Security Agreement") in the principal sum of $50,000.00 granting a security interest in collateral described below.  A true and correct copy of said 901 Security Agreement is attached hereto as **Exhibit 37**.  True and correct copies of Certificates of Title for the vehicles listed below are attached hereto as **Composite Exhibit 38.**

2006 Chevy Truck (VIN 1GBE5C1286F408331)

2007 International SS (VIN 1HTMPAFN47H390847)

In addition, the word Collateral also includes all the following:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral Section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(the "901 Collateral").

51.    To further secure repayment of the 901 Note owed by CENTRAL S&M, on or about November 28, 2011, SWATKOWSKI executed and delivered to BankFIRST a Commercial Guaranty ("Swatkowski Guaranty") on the 901 Note dated November 28, 2011. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 39.**

52.    To further secure repayment of the 901 Note owed by CENTRAL S&M, on or about November 28, 2011, CENTRAL SWEEPING executed and delivered to BankFIRST a Commercial Guaranty ("Central Sweeping Guaranty") on the 901 Note dated November 28, 2011. A true and correct copy of the Central Sweeping Guaranty is attached hereto as **Exhibit 40.**

53. BankFIRST owns and holds the 901 Note in the principal sum of $50,000.00 dated 11/28/11; 901 Loan Agreement dated 11/28/11; 901 Security Agreement dated 11/28/11; Swatkowski Guaranty dated 11/28/11; and Central Sweeping Guaranty dated 11/28/11, all hereinafter referred to as the "901 Loan Documents".

54. CENTRAL S&M has defaulted under the 901 Loan Documents by virtue of its failure to make payments due under the 901 Loan Documents on February 1, 2014 or any payments due thereafter.

55. BankFIRST declares the full amount payable under the 901 Loan Documents to be due.

56. BankFIRST is entitled to foreclose the lien of its 901 Loan Documents on the Collateral against CENTRAL S&M named herein.

## 1128 LOAN

57. On or about January 18, 2013, SWATKOWSKI, LLC executed and delivered to BankFIRST a Promissory Note ("1128 Note") in the principal sum of $437,980.00. A true and correct copy of said 1128 Note is attached hereto as **Exhibit 41.**

58. On or about January 18, 2013, SWATKOWSKI, LLC executed and delivered to BankFIRST a Business Loan Agreement ("1128 Loan Agreement") in the principal sum of $437,980.00. A true and correct copy of said 1128 Loan Agreement is attached hereto as **Exhibit 42**.

59. On or about January 18, 2013, CENTRAL SWEEPING and CENTRAL S&M executed and delivered to BankFIRST a Commercial Security Agreement ("1128 Security Agreement") in the principal sum of $437,980.00 granting a security interest in the collateral

described below. A true and correct copy of said 1128 Security Agreement is attached hereto as

**Exhibit 43.**

All Inventory, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral Section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(the "1128 Collateral").

60.    On or about January 18, 2013, SWATKOWSKI, LLC executed and delivered to BankFIRST a Mortgage ("1128 Mortgage") in the maximum principal amount not to exceed $876,000.00. The 1128 Mortgage was recorded on January 23, 2013, in Official Records Book 10509 Page 5430 in the Public Records of Orange County, Florida. A true and correct copy of the 1128 Mortgage is attached hereto as **Exhibit 44.**

61.    To further secure repayment of the 1128 Note owed by SWATKOWSKI, LLC, on or about January 18, 2013, SWATKOWSKI executed and delivered to BankFIRST a

Commercial Guaranty ("Swatkowski Guaranty") on the 1128 Note dated January 18, 2013. A true and correct copy of the Swatkowski Guaranty is attached hereto as **Exhibit 45.**

62.     To further secure repayment of the 1128 Note owed by SWATKOWSKI, LLC, on or about January 18, 2013, CENTRAL SWEEPING executed and delivered to BankFIRST a Commercial Guaranty ("Central Sweeping Guaranty") on the 1128 Note dated January 18, 2013. A true and correct copy of the Central Sweeping Guaranty is attached hereto as **Exhibit 46.**

63.     To further secure repayment of the 1128 Note owed by SWATKOWSKI, LLC, on or about January 18, 2013, CENTRAL S&M executed and delivered to BankFIRST a Commercial Guaranty ("Central S&M Guaranty") on the 1128 Note dated January 18, 2013. A true and correct copy of the Central S&M Guaranty is attached hereto as **Exhibit 47.**

64.     On or about January 18, 2013, SWATKOWSKI, LLC executed and delivered to BankFIRST an Assignment of Rents ("Assignment of Rents") in an amount not to exceed in the aggregate $876,000.00.  The Assignment of Rents was recorded as the last three pages of the Mortgage described in Exhibit 42 on January 23, 2014, in the Official Records Book 10509 Page 5430 in the Public Records of Orange County, Florida.  A true and correct copy of the Assignment of Rents is attached hereto as **Exhibit 48.**

65.     BankFIRST owns and holds the 1128 Note in the principal sum of $437,980.00 dated 1/18/13; 1128 Loan Agreement dated 1/18/13; 1128 Security Agreement dated 1/18/13; 1128 Mortgage dated 1/18/13; Swatkowski Guaranty dated 1/18/13; Central Sweeping Guaranty dated 11/18/13; Central S&M Guaranty dated 1/18/13; and Assignment of Rents dated 1/18/13, all hereinafter referred to as the "1128 Loan Documents".

20913343 v1

66.    CENTRAL S&M has defaulted under the 1128 Loan Documents by virtue of its failure to make payments due under the 1128 Loan Documents on January 18, 2014 or any payments due thereafter.

67.    BankFIRST declares the full amount payable under the 1128 Loan Documents to be due.

68.    BankFIRST is entitled to foreclose the lien of its 1128 Loan Documents on the Collateral against SWATKOWSKI, LLC named herein.

69.    By reason of the default in payment of the sums due under the terms of the 792 Loan Documents, 793 Loan Documents, 901 Loan Documents, and 1128 Loan Documents, Plaintiff has elected to, and does by this Complaint, accelerate the entire principal sums, together with accrued interest and other charges, all of which are declared to be due and payable to Plaintiff.

70.    All conditions precedent to the filing of this action have occurred.

71.    It became and was necessary or will be necessary for Plaintiff to obtain a foreclosure title report in order to discover the names and existence of claims of all persons, if any, interested in said Real Property since the execution of the 792 Note, 792 Mortgage, 1128 Note and 1128 Mortgage herein sought to be foreclosed; $1,940.00 for a foreclosure filing fee and $150.00 for service of process, prior to or contemporaneously with filing this suit.  These expenses which have been reasonably incurred by Plaintiff, are, and by the express terms of the Loan Documents, secured by the liens of the 792 Mortgage and 1128 Mortgage (together "Mortgage").

72.     BankFIRST may expend during the pendency of this suit certain necessary costs to protect its security, including, but not limited to, ad valorem real property taxes and hazard insurance premiums, all of which are secured by the lien of the Mortgage.

73.     BankFIRST may expend during the pendency of this suit certain necessary costs to protect its security, including, but not limited to, ad valorem real property taxes and hazard insurance premiums, all of which are secured by the lien of the Mortgage.

74.     Plaintiff has employed the law firm of Burr & Forman, LLP as their attorneys to institute and prosecute this suit and have agreed to pay Burr & Forman, LLP a reasonable fee for services rendered, such fee being an additional indebtedness secured by the lien of the Mortgage.

75.     As of June 25, 2014, CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI LLC, and SWATKOWSKI owe Plaintiff the outstanding principal sum of $116,597.62, plus accrued and unpaid interest of $6762.80 as of June 25, 2014, late fees of $702.98, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $58.30 per diem, pursuant to the terms of the 792 Loan Documents, and interest at the statutory rate subsequent to the entry of any judgment.

76.     As of June 25, 2014, CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI LLC, and SWATKOWSKI owe Plaintiff the outstanding principal sum of $114,644.17, plus accrued and unpaid interest of $6,649.12 as of June 25, 2014, late fees of $904.77, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $57.32 per diem, pursuant to the terms of the 793 Loan Documents, and interest at the statutory rate subsequent to the entry of any judgment.

20913343 v1

77. As of June 25, 2014, CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI LLC, and SWATKOWSKI owe Plaintiff the outstanding principal sum of $16,335.69, plus accrued and unpaid interest of $1,176.48 as of June 25, 2014, late fees of $759.00, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $8.17 per diem, pursuant to the terms of the 901 Loan Documents, and interest at the statutory rate subsequent to the entry of any judgment.

78. As of June 25, 2014, CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI LLC, and SWATKOWSKI owe Plaintiff the outstanding principal sum of $426,106.18, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, pursuant to the terms of the 1128 Loan Documents, and interest at the statutory rate subsequent to the entry of any judgment.

## COUNT I - FORECLOSURE OF MORTGAGE

79. This is an action to foreclose a mortgage on real property located at 531 Ocoee-Apopka Road, Ocoee, Florida 34761 in Orange County, Florida, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, and more particularly described as follows:

That portion of the Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida being described as follows:

Commence at the Southeast corner of the Southeast ¼ of the Southwest ¼ of Section 7; thence run South 88° 46' 40" West along the South line of said Southeast ¼ of the Southwest ¼ 17.91 feet to the West right of way line of County Road 437 for the Point of Beginning; thence continue along said South line South 88° 46' 40" West, 706.54 feet to the centerline of a drainage ditch as described in Official Records Book 972, Page 471, Public Records of Orange County, Florida; thence run the following three (3) courses along said centerline; North 02° 18' 42" West 39.20 feet; North 07° 32' 18" East, 158.30 feet; North 13° 27' 12" West, 18.92 feet to the North line of the West 633.44 feet of South 213.84 feet of the aforesaid Southeast ¼ of the Southwest ¼; thence run North 88° 46' 40" East along said North line, 53.59 feet to a line 660.00 feet West of the East line of said Southeast ¼ of the Southwest ¼ when measured along the South line of said Southeast ¼ of the Southwest ¼; thence run North 01° 04' 14" East along said line, 172.75 feet to a line 389.76 feet North of the South line of said Southeast ¼ of the Southwest ¼, when measured along the East line of said Southeast ¼ of the Southwest ¼; thence run North 88° 46' 40" East along said line, 134.31 feet to the centerline of a drainage ditch; thence run the following (5) courses along said centerline South 74° 16' 48" East, 203.54 feet; South 72° 24' 41" East, 103.49 feet; South 70° 11' 22" East, 111.56 feet; South 77° 11' 12" East, 94.07 feet; North 84° 49' 41" East, 8.83 feet to the West right of way line of County Road 437; thence run South 00° 05' 46" East along said West right of way line, 231.57 feet to the Point of Beginning.

*The aforesaid parcel of land having been historically described as follows:*

Begin at the Southeast corner of Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida run North 5.86 chains, West 10 chains, South 5.86 chains, East 10 Chains, less that portion lying Northerly of the center line of a ditch more fully described as: begin at a point 386.76 feet North of the said Southeast corner, run South 87° 39' West 517.75 feet; thence run Southeasterly along the center line of a ditch to a point on the East line of the aforesaid Southeast ¼ Southwest ¼ 153.48 feet South from Point of Beginning, thence run North 153.48 to a Point of Beginning and less road right-of-way on East.

That part of the East 583.44 feet of the West 633.44 feet of the
South 213.84 feet of the Southeast ¼ of the Southwest ¼ of
Section 7, Township 22 South, Range 28 East, Orange County,
Florida lying East of the centerline of the State of Florida Drainage
Easement as described in the instrument recorded in Official
Records Book 1004, Page 749, of the Public Records of Orange
County, Florida; the said centerline of the drainage ditch traversing
said Parcel being as follows: Beginning on the South line of the
above described Parcel 65.20 Feet West of the Southeast corner
run North 2° 18' 42" West 39.20 Feet, thence North 7° 32' 18" East
158.30 Feet, thence North 13° 27' 12" West 18.27 feet to a point on
the North line of the above described Parcel 54.38 feet West of its
Northeast corner.

Parcel No. 07-22-28-0000-00019
Property located: 531 Ocoee-Apopka Road, Ocoee, Florida 34761
(the "Real Property")

80.    Unknown Tenants may claim some interest in the Real Property pursuant to a
written or oral lease agreement; however, any interest of Unknown Tenants in the Real Property
is junior and inferior to the interest of BankFIRST.

81.    In addition to all other named defendants, the unknown spouses, heirs, devisees,
grantees, assignees, creditors, trustees, successors in interest or other parties claiming an interest
in the subject property, by, through, under or against any of said defendants, whether natural or
corporate, who are not known to be alive or dead, dissolved or existing, are joined as defendants
herein. The claims of any of said parties are subject, subordinate, and inferior to the interests of
BankFIRST under the 792 Loan Documents and 1128 Loan Documents.

WHEREFORE, BankFIRST respectfully requests this Court to enter a judgment:

(a)    determining the priority position of BankFIRST's Mortgage on the Property;

(b)    declaring that SWATKOWSKI LLC'S, CENTRAL SWEEPING'S, CENTRAL
S&M'S, and SWATKOWSKI'S right, title and interest, or that of SWATKOWSKI LLC'S,
CENTRAL SWEEPING'S, CENTRAL S&M'S, and SWATKOWSKI'S successors or assigns,

and all persons claiming under or against SWATKOWSKI LLC'S, CENTRAL SWEEPING'S, CENTRAL S&M'S, and SWATKOWSKI'S since the filing of the Notice of Lis Pendens, be foreclosed;

     (c)    accounting for the sums due BankFIRST under the Loan Documents;

     (d)    awarding BankFIRST the costs, including title search expenses, maintenance expenses and costs related to the post-judgment sale of the Real Property and reasonable attorney's fees incurred in the prosecution of this action;

     (e)    declaring that if the total sum due BankFIRST is not paid within the time set by the Court, the subject Real Property will be sold by judicial sale to the highest bidder to satisfy BankFIRST's claim, prejudgment costs, including title search expenses, maintenance expenses, attorney's fees and post-judgment costs of said sale;

     (f)    directing the Clerk to issue a Writ of Possession without further order of this Court;

     (g)    reserving the jurisdiction of this Court to award a deficiency judgment against SWATKOWSKI LLC'S, CENTRAL SWEEPING'S, CENTRAL S&M'S, and SWATKOWSKI'S (and any Guarantors of the indebtedness) if the proceeds of the judicial sale are insufficient to satisfy BankFIRST's claim; and

     (h)    ordering that the Court retain jurisdiction to grant further relief as the Court deems necessary and proper.

## COUNT II - ACTION FOR REFORMATION OF MORTGAGES

82.    This is a cause of action for reformation of a mortgage.

83.    BankFIRST hereby realleges and incorporates Paragraphs 1 through 78 above, as if fully set forth herein.

84.    At the time of the execution of those certain Mortgages, BankFIRST intended that the Mortgage secure property commonly known as 531 Ocoee Apopka Road, Ocoee, FL 34761, as more particularly described in **Exhibits 20 and 44.**

85.    The Mortgages clearly state the correct common description of the property to be mortgaged, however, as a result of a scrivener's error by the draftsman of those certain Mortgages, the legal description corresponding to the common description is inaccurate in the Mortgage's legal description.    More particularly, the Mortgages legal description does not conform to the legal in the vesting deed for the property (the "Scrivener's Error").

86.    As the result of the Scrivener's Error, the Mortgages do not accurately express the true agreement of the parties and the Scrivener's Error constitutes a mutual mistake.

87.    The reformation of the Mortgages as requested herein would in no way alter the true agreement of the parties regarding the content of the Mortgages or the terms of the loans that they secure.

88.    The reformation of the Mortgages would cause the Mortgages to fully conform to the agreement of the parties existing at the time that the Mortgages were executed and the mutual mistake was made.

WHEREFORE, BankFIRST hereby respectfully requests that this Court enter a judgment reforming the Mortgages by (a) amending the Mortgage to reflect the correct legal description, (b) if necessary, ordering the parties to execute, deliver and record in the Public Records of Orange County, Florida, those instruments necessary to cause the Mortgage to conform to the true agreement between the parties, and (c) granting such other and further relief as it deems just and proper.

## COUNT III – BREACH OF CONTRACT ON 792 NOTE

89.    This is an action against Defendant, CENTRAL SWEEPING, for breach under that certain 792 Note attached hereto as **Exhibit 1** and all renewals thereto (hereinafter "792 Note").

90.    BankFIRST realleges and reincorporates paragraphs 1 - 78 of this Complaint as if fully set forth herein.

91.    CENTRAL SWEEPING has defaulted under the 792 Note by failing to make the payment due on March 1, 2014 or any installments due thereafter.  Pursuant to the terms of the 792 Note, Plaintiff has chosen to accelerate all sums due thereunder.

92.    CENTRAL SWEEPING owes BankFIRST the sum of One Hundred Sixteen Thousand Five Hundred Ninety-seven and 62/100 Dollars ($116,597.62) on the principal on the 792 Note with interest, costs, attorneys' fees, and title search expenses for ascertaining parties to this action, which sums are owed by CENTRAL SWEEPING, pursuant to the terms of the 792 Note.

WHEREFORE, BankFIRST respectfully requests this Court for entry of judgment for damages against CENTRAL SWEEPING in the principal sum of $116,597.62, together with interest, costs, attorneys' fees, late fees and title search expenses for ascertaining parties to this action, as prescribed under the 792 Note attached hereto as **Exhibit 1** and for such other and further relief as the Court may deem just and proper in the premises.

## COUNT IV – BREACH OF CONTRACT ON 793 NOTE

20913343 v1

93.    This is an action against Defendant, CENTRAL SWEEPING, for breach under that certain 792 Note attached hereto as **Exhibit 24** and all renewals thereto (hereinafter "793 Note").

94.    BankFIRST realleges and reincorporates paragraphs 1 - 78 of this Complaint as if fully set forth herein.

95.    CENTRAL SWEEPING has defaulted under the 793 Note by failing to make the payment due on March 1, 2014 or any installments due thereafter.  Pursuant to the terms of the 793 Note, Plaintiff has chosen to accelerate all sums due thereunder.

96.    CENTRAL SWEEPING owes BankFIRST the sum of One Hundred Fourteen Thousand Six Hundred Forty-four and 17/100 Dollars ($114,644.17) on the principal on the 793 Note with interest, costs, and attorneys' fees, which sums are owed by CENTRAL SWEEPING, pursuant to the terms of the 793 Note.

WHEREFORE, BankFIRST respectfully requests this Court for entry of judgment for damages against CENTRAL SWEEPING in the principal sum of $114,644.17, together with interest, costs, attorneys' fees, and late fees, as prescribed under the 793 Note attached hereto as **Exhibit 24** and for such other and further relief as the Court may deem just and proper in the premises.

## COUNT V – BREACH OF CONTRACT ON 901 NOTE

97.    This is an action against Defendant, CENTRAL SWEEPING, for breach under that certain 901 Note attached hereto as **Exhibit 35** and all renewals thereto (hereinafter "901 Note").

98.    BankFIRST realleges and reincorporates paragraphs 1 - 78 of this Complaint as if fully set forth herein.

99.    CENTRAL S&M has defaulted under the 901 Note by failing to make the payment due on February 1, 2014 or any installments due thereafter.  Pursuant to the terms of the 901 Note, Plaintiff has chosen to accelerate all sums due thereunder.

100.    CENTRAL S&M owes BankFIRST the sum of Sixteen Thousand Three Hundred Thirty-five and 69/100 Dollars ($16,335.69) on the principal on the 901 Note with interest, costs, and attorneys' fees, which sums are owed by CENTRAL S&M, pursuant to the terms of the 793 Note.

WHEREFORE, BankFIRST respectfully requests this Court for entry of judgment for damages against CENTRAL S&M in the principal sum of $16,335.69, together with interest, costs, attorneys' fees, and late fees as prescribed under the 901 Note attached hereto as **Exhibit 35** and for such other and further relief as the Court may deem just and proper in the premises.

## COUNT VI – BREACH OF CONTRACT ON 1128 NOTE

101.    This is an action against Defendant, SWATKOWSKI LLC, for breach under that certain 1128 Note attached hereto as **Exhibit 41** and all renewals thereto (hereinafter "1128 Note").

102.    BankFIRST realleges and reincorporates paragraphs 1 - 78 of this Complaint as if fully set forth herein.

103.    SWATKOWSKI LLC has defaulted under the 1128 Note by failing to make the payment due on January 18, 2014 or any installments due thereafter.  Pursuant to the terms of the 1128 Note, Plaintiff has chosen to accelerate all sums due thereunder.

104.    SWATKOWSKI LLC owes BankFIRST the sum of Four Hundred Twenty-six Thousand One Hundred Six and 18/00 Dollars ($426,106.18) on the principal on the 1128 Note

20913343 v1

with interest, costs, attorneys' fees, and title search expenses for ascertaining parties to this action, which sums are owed by SWATKOWSKI LLC, pursuant to the terms of the 1128 Note.

WHEREFORE, BankFIRST respectfully requests this Court for entry of judgment for damages against SWATKOWSKI LLC in the principal sum of $426,106.18, together with interest, costs, attorneys' fees, late fees and title search expenses for ascertaining parties to this action, as prescribed under the 1128 Note attached hereto as **Exhibit 41** and for such other and further relief as the Court may deem just and proper in the premises.

### COUNT VII – COMMERCIAL GUARANTY 792 NOTE– SWATKOWSKI

105.    This is an action against the SWATKOWSKI based upon a Guaranty.

106.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

107.    SWATKOWSKI has breached the terms of his Guaranty, by virtue of his failure to pay the amounts owed by SWATKOWSKI to BankFIRST as described above.

108.    Accordingly, SWATKOWSKI owes to BankFIRST the outstanding principal sum of $116,597.62, plus accrued and unpaid interest of $6,762.80 as of June 25, 2014, late fees of $702.98, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $58.30 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibits 4, 7, 11,14, and 17**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against SWATKOWSKI in the principal sum of $116,597.62, plus accrued and unpaid interest of $6,762.80 as of June 25, 2014, late fees of $702.98, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure

proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $58.30 per diem, and such other and further relief as the Court may deem just and proper in the premises.

### COUNT VIII – COMMERCIAL GUARANTY 792 NOTE– CENTRAL S&M

109.    This is an action against the CENTRAL S&M based upon a Guaranty.

110.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

111.    CENTRAL S&M has breached the terms of its Guaranty, by virtue of its failure to pay the amounts owed by CENTRAL S&M to BankFIRST as described above.

112.    Accordingly, CENTRAL S&M owes to BankFIRST the outstanding principal sum of $116,597.62, plus accrued and unpaid interest of $6,762.80 as of June 25, 2014, late fees of $702.98, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $58.30 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibits 5, 8, 12, 15, and 18**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against CENTRAL S&M in the principal sum of $116,597.62, plus accrued and unpaid interest of $6,762.80 as of June 25, 2014, late fees of $702.98, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $58.30 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT IX – COMMERCIAL GUARANTY 793 NOTE– SWATKOWSKI

113.    This is an action against the SWATKOWSKI based upon a Guaranty.

114.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

115.    SWATKOWSKI has breached the terms of his Guaranty, by virtue of his failure to pay the amounts owed by SWATKOWSKI to BankFIRST as described above.

116.    Accordingly, SWATKOWSKI owes to BankFIRST the outstanding principal sum of $114,644.17, plus accrued and unpaid interest of $6,649.12 as of June 25, 2014, late fees of $904.77, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $57.32 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibits 29 and 32**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against SWATKOWSKI in the principal sum of $114,644.17, plus accrued and unpaid interest of $6,649.12 as of June 25, 2014, late fees of $904.77, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $57.32 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT X – COMMERCIAL GUARANTY 793 NOTE– CENTRAL S&M

117.    This is an action against the CENTRAL S&M based upon a Guaranty.

118.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

119.   CENTRAL S&M has breached the terms of its Guaranty, by virtue of its failure to pay the amounts owed by CENTRAL S&M to BankFIRST as described above.

120.   Accordingly, CENTRAL S&M owes to BankFIRST the outstanding principal sum of $114,644.17, plus accrued and unpaid interest of $6,649.12 as of June 25, 2014, late fees of $904.77, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $57.32 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibits 30 and 33**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against CENTRAL S&M in the principal sum of $114,644.17, plus accrued and unpaid interest of $6,649.12 as of June 25, 2014, late fees of $904.77, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $57.32 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT XI – COMMERCIAL GUARANTY 901 NOTE– SWATKOWSKI

121.   This is an action against the SWATKOWSKI based upon a Guaranty.

122.   BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

123.   SWATKOWSKI has breached the terms of his Guaranty, by virtue of his failure to pay the amounts owed by SWATKOWSKI to BankFIRST as described above.

124.   Accordingly, SWATKOWSKI owes to BankFIRST the outstanding principal sum of $16,335.69, plus accrued and unpaid interest of $1,176.48 as of June 25, 2014, late fees of

$759.00, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $8.17 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibit 39**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against SWATKOWSKI in the principal sum of $16,335.69, plus accrued and unpaid interest of $1,176.48 as of June 25, 2014, late fees of $759.00, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $8.17 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT XII – COMMERCIAL GUARANTY 901 NOTE– CENTRAL SWEEPING

125. This is an action against the CENTRAL SWEEPING based upon a Guaranty.

126. BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

127. CENTRAL SWEEPING has breached the terms of its Guaranty, by virtue of its failure to pay the amounts owed by CENTRAL SWEEPING to BankFIRST as described above.

128. Accordingly, CENTRAL SWEEPING owes to BankFIRST the outstanding principal sum of $16,335.69, plus accrued and unpaid interest of $1,176.48 as of June 25, 2014, late fees of $759.00, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $8.17 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibit 40**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against CENTRAL SWEEPING in the principal sum of $16,335.69, plus accrued and unpaid interest of $1,176.48 as of June 25, 2014, late fees of $759.00, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $8.17 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## <u>COUNT XIII – COMMERCIAL GUARANTY 1128 NOTE– SWATKOWSKI</u>

129.    This is an action against the SWATKOWSKI based upon a Guaranty.

130.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

131.    SWATKOWSKI has breached the terms of his Guaranty, by virtue of his failure to pay the amounts owed by SWATKOWSKI to BankFIRST as described above.

132.    Accordingly, SWATKOWSKI owes to BankFIRST the outstanding principal sum of $426,106.18, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, pursuant to the terms of the Guaranty attached hereto as **<u>Exhibit 45</u>**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against SWATKOWSKI in the principal sum of $426,106.18, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure

proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT XIV – COMMERCIAL GUARANTY 1128 NOTE– CENTRAL SWEEPING

133.    This is an action against the CENTRAL SWEEPING based upon a Guaranty.

134.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

135.    CENTRAL SWEEPING has breached the terms of its Guaranty, by virtue of its failure to pay the amounts owed by CENTRAL SWEEPING to BankFIRST as described above.

136.    Accordingly, CENTRAL SWEEPING owes to BankFIRST the outstanding principal sum of $426,106.18, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibit 46**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against CENTRAL SWEEPING in the principal sum of $16,335.69, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT XV – COMMERCIAL GUARANTY 1128 NOTE– CENTRAL S&M

137.    This is an action against the CENTRAL S&M based upon a Guaranty.

138.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

139.    CENTRAL S&M has breached the terms of its Guaranty, by virtue of its failure to pay the amounts owed by CENTRAL S&M to BankFIRST as described above.

140.    Accordingly, CENTRAL S&M owes to BankFIRST the outstanding principal sum of $426,106.18, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, pursuant to the terms of the Guaranty attached hereto as **Exhibit 47**.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests this Court for entry of judgment for its damages against CENTRAL S&M in the principal sum of $16,335.69, plus accrued and unpaid interest of $33,661.90 as of June 25, 2014, late fees of $1,599.18, together with any further advances to protect the Property, attorneys' fees accrued in the foreclosure proceeding, and interest from June 26, 2014 to date of entry of judgment at the default rate of $213.05 per diem, and such other and further relief as the Court may deem just and proper in the premises.

## COUNT XVI - FORECLOSURE OF SECURITY AGREEMENT

141.    This is an action to foreclose a security interest in the Collateral located in Orange County, Florida.

142.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

143.    BankFIRST owns and holds 792 Note and 792 Security Agreement, 793 Note, 793 Security Agreement and Second 793 Security Agreement, 901 Note and 901 Security Agreement, and 1128 Note and 1128 Security Agreement.

144.    CENTRAL SWEEPING and CENTRAL S&M are in default pursuant to the terms of 792 Note, 793 Note, 901 Note and 1128 Note as more specifically described above. In addition, as a result of this default, CENTRAL SWEEPING and CENTRAL S&M are in default under the terms of the 792 Security Agreement attached as **Exhibit 3**, 793 Security Agreement attached as **Exhibit 26**, Second 793 Security Agreement attached as **Exhibit 28**, 901 Security Agreement attached as **Exhibit 37**, and 1128 Security Agreement attached as **Exhibit 43** (collectively "Security Agreements").

145.    As a result of the defaults by CENTRAL SWEEPING and CENTRAL S&M, BankFIRST is owed the sums set forth in paragraphs 75, 76, 77, and 78 above. BankFIRST is entitled to foreclose its lien against the Collateral described in the Security Agreements, thereby foreclosing all right, title and interest of the Defendants named herein.

WHEREFORE, BankFIRST demands that the Court enter a final judgment of foreclosure, foreclosing all of Defendants' right, title or interest in the Collateral, and for such other and further relief as the Court may deem appropriate to protect BankFIRST's rights.

## COUNT XVII - REPLEVIN

146.    This is an action pursuant to Chapter 78, Florida Statutes, to recover possession of the Collateral that BankFIRST believes to be located in Orange County, Florida.

147.    BankFIRST realleges paragraphs 1 – 78 of this Complaint as if fully set forth herein.

148.    The specific description of the Collateral is set forth on 792 Security Agreement attached as **Exhibit 3**, 793 Security Agreement attached as **Exhibit 26,** Second 793 Security Agreement attached as **Exhibit 28**, 901 Security Agreement attached as **Exhibit 37**, 1128 Security Agreement attached as **Exhibit 43**, and UCC-1 Financing Statements, copies of which are attached as **Exhibits 21, 22, 23, and 34.**

149.    Upon information and belief, the Collateral is in CENTRAL SWEEPING's, CENTRAL S&M's, SWATKOWSKI, LLC's, or SWATKOWSKI's, or alternatively, in CENTRAL SWEEPING's, CENTRAL S&M's, SWATKOWSKI, LLC's, or SWATKOWSKI's constructive possession or control.

150.    To BankFIRST's best knowledge, information, and belief, the Collateral is located in Orange County, Florida.

151.    Because of CENTRAL SWEEPING's, CENTRAL S&M's, SWATKOWSKI, LLC's, or SWATKOWSKI's failure to pay the amounts owed under the 792 Note, 793 Note, 901 Note, and 1128 Note, and pursuant to BankFIRST's right as a secured creditor under §679.511, Florida Statutes, BankFIRST is entitled to possession of the Collateral.

152.    The Collateral is being wrongfully detained by CENTRAL SWEEPING's, CENTRAL S&M's, SWATKOWSKI, LLC's, or SWATKOWSKI's.

153.    Upon information and belief, the Collateral has not been taken for any tax assessment or fine pursuant to law and has not been taken under an execution or attachment against CENTRAL SWEEPING's, CENTRAL S&M's, SWATKOWSKI, LLC's, and SWATKOWSKI's property.

154. BankFIRST has demanded that CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI, LLC, and SWATKOWSKI make payments due under the 792 Note, 793 Note, 901 Note, and 1128 Note. However, despite demand, CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI, LLC, and SWATKOWSKI have refused to tender the payments due or deliver possession of the Collateral to BankFIRST.

WHEREFORE, Plaintiff, BankFIRST, respectfully requests that this Court:

(a)    enter an order pursuant to §78.065, Florida Statutes, directing CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI, LLC, and SWATKOWSKI to show cause, upon hearing at a time and date certain, why possession of the Collateral should not be granted to BankFIRST;

(b)    upon notice and a hearing on the Order to Show Cause, enter an order directing the Clerk of the Circuit Court to issue a Writ of Replevin directing the Sheriff of Orange County and the State of Florida to take possession of the Collateral and deliver it to BankFIRST; and

(c)    enter a Final Judgment of Replevin in favor of BankFIRST and against CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI, LLC, and SWATKOWSKI awarding permanent possession of the Collateral to BankFIRST, together with any other relief the Court deems appropriate to protect BankFIRST's rights.

Dated: August 29, 2014.

/s/ Jon E. Kane
JON E. KANE, ESQ.
Florida Bar Number 814202
Email: jkane@burr.com
Secondary Email: ccrumrine@burr.com; and
lloving@burr.com
BURR & FORMAN, LLP
200 South Orange Avenue, Suite 800

Orlando, FL 32801
Telephone: 407-540-6625
Facsimile: 407-540-6601

**ATTORNEYS FOR PLAINTIFF**

Filing # 17685893 Electronically Filed 08/29/2014 01:22:09 PM

IN THE CIRCUIT COURT FOR THE
NINTH JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO. 2014-CA-9200-O

BANKFIRST,

      Plaintiff,

v.

CENTRAL SWEEPING SERVICE,
INC., a Florida corporation;
CENTRAL SWEEPING & MILLING,
LLC, a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, LLC,
a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, individually; and
UNKNOWN TENANT in possession,

      Defendants.
_____/



DOC# 20140446078 B: 10799 P: 1374
09/03/2014 11:01:58 AM  Page 1 of 4
Rec Fee: $17.00
Martha O. Haynie, Comptroller
Orange County, FL
PU - Ret To: BURR AND FORMAN LLP

### NOTICE OF LIS PENDENS

TO:    THE ABOVE NAMED DEFENDANTS AND
        ALL OTHERS WHOM IT MAY CONCERN:

    YOU ARE NOTIFIED OF THE FOLLOWING:

      A)    The Plaintiff has instituted this action against Defendants, CENTRAL

SWEEPING SERVICE, INC., a Florida corporation; CENTRAL SWEEPING & MILLING,

LLC, a Florida limited liability company; DOUGLAS S. SWATKOWSKI, LLC, a Florida

limited liability company; DOUGLAS S. SWATKOWSKI, individually; and UNKNOWN

TENANT in possession, seeking to foreclose a mortgage with respect to the property described

below;

      B)    The Plaintiff in this action is BankFIRST;

      C)    The case number of this action is shown in the caption.

      D)    The real property and personal property that is the subject matter of this action is

in Orange County, Florida, and more particularly described as follows:

20970863 v1



## REAL PROPERTY DESCRIPTION

That portion of the Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida being described as follows:

Commence at the Southeast corner of the Southeast ¼ of the Southwest ¼ of Section 7; thence run South 88° 46' 40" West along the South line of said Southeast ¼ of the Southwest ¼, 17.91 feet to the West right of way line of County Road 437 for the Point of Beginning; thence continue along said South line South 88° 46' 40" West, 706.54 feet to the centerline of a drainage ditch as described in Official Records Book 972, Page 471, Public Records of Orange County, Florida; thence run the following three (3) courses along said centerline; North 02° 18' 42" West 39.20 feet; North 07° 32' 18" East, 158.30 feet; North 13° 27' 12" West, 18.92 feet to the North line of the West 633.44 feet of South 213.84 feet of the aforesaid Southeast ¼ of the Southwest ¼; thence run North 88° 46' 40" East along said North line, 53.59 feet to a line 660.00 feet West of the East line of said Southeast ¼ of the Southwest ¼ when measured along the South line of said Southeast ¼ of the Southwest ¼; thence run North 01° 04' 14" East along said line, 172.75 feet to a line 389.76 feet North of the South line of said Southeast ¼ of the Southwest ¼, when measured along the East line of said Southeast ¼ of the Southwest ¼; thence run North 88° 46' 40" East along said line, 134.31 feet to the centerline of a drainage ditch; thence run the following (5) courses along said centerline South 74° 16' 48" East, 203.54 feet; South 72° 24' 41" East, 103.49 feet; South 70° 11' 22" East, 111.56 feet; South 77° 11' 12" East, 94.07 feet; North 84° 49' 41" East, 8.83 feet to the West right of way line of County Road 437; thence run South 00° 05' 46" East along said West right of way line, 231.57 feet to the Point of Beginning.

*The aforesaid parcel of land having been historically described as follows:*

Begin at the Southeast corner of Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida run North 5.86 chains, West 10 chains, South 5.86 Chains, East 10 Chains, less that portion lying Northerly of the center line of a ditch more fully described as: begin at a point 386.76 feet North of the said Southeast corner, run South 87° 39' West 517.75 feet; thence run Southeasterly along the center line of a ditch to a point on the East line of the aforesaid Southeast ¼ Southwest ¼ 153.48 feet South from Point of Beginning, thence run North 153.48 to a Point of Beginning and less road right-of-way on East.

That part of the East 583.44 feet of the West 633.44 feet of the South 213.84 feet of the Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida lying East of the centerline of the State of Florida Drainage Easement as described in the instrument recorded in Official Records Book 1004, Page 749, of the Public Records of Orange County, Florida; the said centerline of the drainage ditch traversing said Parcel being as follows: Beginning on the South line of the above described Parcel 65.20 Feet West of the

Southeast corner run North 2° 18' 42" West 39.20 Feet, thence North 7° 32' 18" East 158.30 Feet, thence North 13° 27' 12" West 18.27 feet to a point on the North line of the above described Parcel 54.38 feet West of its Northeast corner.

Parcel No. 07-22-28-0000-00019

Located at: 531 Ocoee-Apopka Road, Ocoee, FL  34761

## PERSONAL PROPERTY DESCRIPTION

2007 Freightliner Truck (VIN 1FVACXCS17HX87574)
2007 Freightliner Truck (VIN 1FVACXCS37HX87575)
2007 Freightliner Truck (VIN 1FVACXCS47HX58280)
2006 GMC TK (VIN J8DB4B16067024096)
2003 Sterling TK (VIN 49HAADBV93DK21061)
2003 Sterling TK (VIN 49HAADBV03DK21062)
2000 GMC Truck (VIN J8DE5B146Y7900097)
2006 Chevy Truck (VIN 1GBE5C1286F408331)
2007 International SS (VIN 1HTMPAFN47H390847)

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles, including specifically, but not limited to one 2009 SM80CT Trailer Sweeper Serial No. 909018, together with all substitutions and replacements thereto, all accessories added to or used in connection with such equipment.

All Inventory, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral Section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral

section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

DATED this 29th day of August, 2014.

/s/ Jon E. Kane
JON E. KANE, ESQ.
Florida Bar Number 814202
BURR & FORMAN, LLP
200 South Orange Avenue, Suite 800
Orlando, Florida  32801
Telephone:  (407) 540-6600
Facsimile:  (407) 540-6601
Email: jkane@burr.com
Secondary email: ccrumrine@burr.com and
lloving@burr.com

**ATTORNEYS FOR PLAINTIFF**

20970863 v1

4

Filing # 19030811 Electronically Filed 10/06/2014 11:57:19 AM

IN THE CIRCUIT COURT FOR THE
NINTH JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO. 2014-CA-9200-O

BANKFIRST,

      Plaintiff,

v.

CENTRAL SWEEPING SERVICE,
INC., a Florida corporation;
CENTRAL SWEEPING & MILLING,
LLC, a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, LLC,
a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, individually; and
UNKNOWN TENANT in possession,

      Defendants.        /

## NOTICE OF FILING

    Plaintiff, BANKFIRST, by and through its undersigned counsel, hereby gives Notice of

Filing the following:

1.    Affidavit of Service of Summons and Complaint - Douglas S. Swatkowski, LLC


Dated: October 6, 2014.

                    /s/ Jon E. Kane
                    JON E. KANE, ESQ.
                    Florida Bar Number 814202
                    Email: jkane@burr.com
                    Secondary Email: ccrumrine@burr.com; and
                    lloving@burr.com
                    BURR & FORMAN, LLP
                    200 South Orange Avenue, Suite 800
                    Orlando, FL 32801
                    Telephone: 407-540-6600
                    Facsimile: 407-540-6601

                    **ATTORNEYS FOR PLAINTIFF**

21844389 v1



# AFFIDAVIT OF SERVICE

State of FLORIDA                    County of ORANGE                    Circuit Court

Case Number: 2014-CA-9200-O

Plaintiff:
BANKFIRST

vs.

Defendant:
CENTRAL SWEEPING SERVICE, INC., A FLORIDA CORPORATION;
CENTRAL SWEEPING & MILLING, LLC, A FLORIDA LIMITED
LIABILITY COMPANY; DOUGLAS S. SWATKOWSKI, LLC, A FLORIDA
LIMITED LIABILITY COMPANY; DOUGLAS S. SWATKOWSKI,
INDIVIDUALLY; AND UNKNOWN TENANT IN POSSESSION

For:
Jon Kane
BURR & FORMAN
200 South Orange Avenue
Suite #800
Orlando, FL 32801

Received by ANDREWS AGENCY on the 4th day of September, 2014 at 8:07 am to be served on DOUGLAS S.
SWATKOWSKI, LLC DOUGLAS S. SWATKOWSKI, REGISTERED AGENT, 314 E. BAY STREET, WINTER
GARDEN, FL 34787.

I, S.A. MOODY, being duly sworn, depose and say that on the 30th day of September, 2014 at 4:35 pm, I:

CORPORATE: served by delivering a true copy of the SUMMONS, NOTICE OF LIS PENDENS, COMPLAINT,
EXHIBITS with the date and hour of service endorsed thereon by me, to: EVAN SWATKOWSKI as CO-
RESIDENT OF DOUGLAS SWATKOWSKI, REG. AGENT for DOUGLAS S. SWATKOWSKI, LLC DOUGLAS S.
SWATKOWSKI, REGISTERED AGENT, at the address of: 6832 DUNCASTER ST., WINDERMERE, FL 34786,
and informed said person of the contents therein, in compliance with state statutes.

Additional Information pertaining to this Service:
ANDREWS AGENCY INC. FEE - $120.00
FIRST ADDRESS ATTEMPTED NO LONGER AT THAT ADDRESS, NEW BUSINESS THERE.  SECOND
ADDRESS ATTEMPTED OF 5624 LAKE BUTLER BLVD., WINDERMERE, FL 34786 IS CURRENTLY
UNOCCUPIED.  THIRD ADDRESS ATTEMPTED OF 11425 LAKE BUTLER BLVD., WINDERMERE, FL 34786
MOVED FROM THAT ADDRESS.  SERVICE WAS PERFECTED AT THE RESIDENTIAL ADDRESS PURSUANT
TO FL. STATUTE #48.081(3)(b).

I certify that I am over the age of 18, have no interest in the above action, and am a Special Process Server, in good
standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 3rd day of
October, 2014 by the affiant who is personally known
to me.

NOTARY PUBLIC

S.A. MOODY
O.C.S.P.I.D. #6109

ANDREWS AGENCY
709 Brookhaven Drive
Orlando, FL 32803
(407) 649-2085

Our Job Serial Number: AAM-2020009896
Ref: 50550.77
Service Fee: 60.00

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

Filing # 17685893 Electronically Filed 08/29/2014 01:22:09 PM

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.   2014-CA-9200-O

BANKFIRST,

      Plaintiff,

v.

CENTRAL SWEEPING SERVICE,
INC., a Florida corporation;
CENTRAL SWEEPING & MILLING,
LLC, a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, LLC,
a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, individually;
and UNKNOWN TENANT in possession,

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint

in this action on Defendant:

      By Serving:  **DOUGLAS S. SWATKOWSKI, LLC**
                 Douglas S. Swatkowski, Registered Agent
                 314 E. Bay Street
                 Winter Garden, FL 34787

      Each Defendant is hereby required to serve written defenses to the Complaint on Jon E.

Kane, Esquire, Plaintiff's attorney, whose address is Bur & Forman LLP, 200 South Orange

Avenue, Suite 800, Orlando, Florida 32801 within 20 days after service of this Summons on that

Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk

of this Court either before service on Plaintiff's attorney or immediately thereafter.   If a

Defendant fails to do so, a default will be entered against that Defendant for the relief demanded

in the Complaint or petition.

**If you are a person with a disability who needs any accommodation, you are
entitled to the provision of certain assistance. Please contact Ninth Circuit
Court Administration ADA Coordinator, Orange County Courthouse, 425 N.
Orange Avenue, Suite 510, Orlando, Florida 32801, (407) 836-2303, at least 7
days before your scheduled court appearance or immediately upon receiving an
official notification if the time before the scheduled appearance is less than 7
days. If you are hearing or voice impaired, call 711.**

DATED on _____, 2014.     Eddie Fernández

Clerk of Circuit Court


s/ Tesha Greene, Deputy Clerk
2014.09.02 11:21:17 -04'00'

(COURT SEAL)

As Deputy Clerk

Civil Division
425 N. Orange Avenue
Room 310
Orlando, Florida 32801

2

Case 6:16-ap-00131-RAC    Doc 6    Filed 02/15/17    Page 65 of 88
Case 6:16-ap-00131-RAC    Doc 1-1    Filed 12/28/16    Page 48 of 71
Filing # 20033673 Electronically Filed 10/30/2014 03:51:30 PM

IN THE CIRCUIT COURT
OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

BANKFIRST,

      Plaintiff,

v.

      Case No.: 2014-CA-9200-O

CENTRAL SWEEPING SERVICE INC.,
a Florida corporation; CENTRAL
SWEEPING & MILLING, LLC, a Florida
limited liability company; DOUGLAS S.
SWATKOWSKI, LLC, a Florida limited
liability company; DOUGLAS S.
SWATKOWSKI, individually; and
UNKOWN TENANT in possession;

      Defendant.
_____/

## ANSWER AND AFFIRMATIVE DEFENSE

Defendants Central Sweeping Service Inc., Central Sweeping & Milling, LLC, Douglas

Swatkowski, LLC and Douglas Swatkowski ("Defendants") answer the Complaint of Plaintiff

BankFirst ("Plaintiff") as follows:

### General Allegations

1. Admit for jurisdictional purposes only

2. Admit

3. Admit for jurisdictional purposes only

4. Admit for jurisdictional purposes only

5. Admit for jurisdictional purposes only

6. Admit only that Douglas Swatkowski is a resident of Orange County


EXHIBIT
D

<u>792 Loan</u>

7.  Admit only that the attached exhibits say what they say, otherwise denied

8.  Admit only that the attached exhibits say what they say, otherwise denied

9.  Admit only that the attached exhibits say what they say, otherwise denied

10. Admit only that the attached exhibits say what they say, otherwise denied

11. Admit only that the attached exhibits say what they say, otherwise denied

12. Admit only that the attached exhibits say what they say, otherwise denied

13. Admit only that the attached exhibits say what they say, otherwise denied

14. Admit only that the attached exhibits say what they say, otherwise denied

15. Admit only that the attached exhibits say what they say, otherwise denied

16. Admit only that the attached exhibits say what they say, otherwise denied

17. Admit only that the attached exhibits say what they say, otherwise denied

18. Admit only that the attached exhibits say what they say, otherwise denied

19. Admit only that the attached exhibits say what they say, otherwise denied

20. Admit only that the attached exhibits say what they say, otherwise denied

21. Admit only that the attached exhibits say what they say, otherwise denied

22. Admit only that the attached exhibits say what they say, otherwise denied

23. Admit only that the attached exhibits say what they say, otherwise denied

24. Admit only that the attached exhibits say what they say, otherwise denied

25. Admit only that the attached exhibits say what they say, otherwise denied

26. Admit only that the attached exhibits say what they say, otherwise denied

27. Admit only that the attached exhibits say what they say, otherwise denied

28. Admit only that the attached exhibits say what they say, otherwise denied

29. Admit only that the attached exhibits say what they say, otherwise denied

30. Admit only that the attached exhibits say what they say, otherwise denied

31. Admit only that the attached exhibits say what they say, otherwise denied

32. Admit only that the attached exhibits say what they say, otherwise denied

33. Admit only that the attached exhibits say what they say, otherwise denied

<u>793 Loan</u>

34. Admit only that the attached exhibits say what they say, otherwise denied

35. Admit only that the attached exhibits say what they say, otherwise denied

36. Admit only that the attached exhibits say what they say, otherwise denied

37. Admit only that the attached exhibits say what they say, otherwise denied

38. Admit only that the attached exhibits say what they say, otherwise denied

39. Admit only that the attached exhibits say what they say, otherwise denied

40. Admit only that the attached exhibits say what they say, otherwise denied

41. Admit only that the attached exhibits say what they say, otherwise denied

42. Admit only that the attached exhibits say what they say, otherwise denied

43. Admit only that the attached exhibits say what they say, otherwise denied

44. Admit only that the attached exhibits say what they say, otherwise denied

45. Admit only that the attached exhibits say what they say, otherwise denied

46. Admit only that the attached exhibits say what they say, otherwise denied

47. Admit only that the attached exhibits say what they say, otherwise denied

<u>901 Loan</u>

48. Admit only that the attached exhibits say what they say otherwise denied

49. Admit only that the attached exhibits say what they say otherwise denied

50. Admit only that the attached exhibits say what they say otherwise denied

51. Admit only that the attached exhibits say what they say otherwise denied

52. Admit only that the attached exhibits say what they say otherwise denied

53. Admit only that the attached exhibits say what they say otherwise denied

54. Admit only that the attached exhibits say what they say otherwise denied

55. Admit only that the attached exhibits say what they say otherwise denied

56. Admit only that the attached exhibits say what they say otherwise denied

<u>1128 Loan</u>

57. Admit only that the attached exhibits say what they say, otherwise denied

58. Admit only that the attached exhibits say what they say, otherwise denied

59. Admit only that the attached exhibits say what they say, otherwise denied

60. Admit only that the attached exhibits say what they say, otherwise denied

61. Admit only that the attached exhibits say what they say, otherwise denied

62. Admit only that the attached exhibits say what they say, otherwise denied

63. Admit only that the attached exhibits say what they say, otherwise denied

64. Admit only that the attached exhibits say what they say, otherwise denied

65. Admit only that the attached exhibits say what they say, otherwise denied

66. Admit only that the attached exhibits say what they say, otherwise denied

67. Admit only that the attached exhibits say what they say, otherwise denied

68. Admit only that the attached exhibits say what they say, otherwise denied

69. Admit only that the attached exhibits say what they say, otherwise denied

70. Without knowledge, therefore denied

71. Without knowledge, therefore denied

72. Without knowledge, therefore denied

73. Without knowledge, therefore denied

74. Without knowledge, therefore denied

75. Without knowledge, therefore denied

76. Without knowledge, therefore denied

77. Without knowledge, therefore denied

78. Without knowledge, therefore denied

<u>Count I – Foreclosure of Mortgage</u>

79. Admit for jurisdictional purposes only

80. Denied

81. Admit only that the attached exhibits say what they say, otherwise denied

<u>Count II – Action for Reformation of Mortgage</u>

82. Admit for jurisdictional purposes only

83. The Defendants restate their responses to paragraphs 1 through 78

84. Admit only that the attached exhibits say what they say, otherwise denied

85. Admit only that the attached exhibits say what they say, otherwise denied

86. Without knowledge, therefore denied

87. Without knowledge, therefore denied

88. Without knowledge, therefore denied

<u>Count III – Breach of Contract on 792 Note</u>

89. Admit for jurisdictional purposes only

90. The Defendants restate their responses to paragraphs 1 through 78

91. Admit only that the attached exhibits say what they say, otherwise denied

92. Admit only that the attached exhibits say what they say, otherwise denied

### Count IV – Breach of Contract on 793 Note

93. Admit for jurisdictional purposes only

94. The Defendants restate their responses to paragraphs 1 through 78

95. Admit only that the attached exhibits say what they say, otherwise denied

96. Admit only that the attached exhibits say what they say, otherwise denied

### Count V – Breach of Contract on 901 Note

97. Admit for jurisdictional purposes only

98. The Defendants restate their responses to paragraphs 1 through 78

99. Admit only that the attached exhibits say what they say, otherwise denied

100.    Admit only that the attached exhibits say what they say, otherwise denied

### Count VI – Breach of Contract on 1128 Note

101.    Admit for jurisdictional purposes only

102.    The Defendants restate their responses to paragraphs 1 through 78

103.    Admit only that the attached exhibits say what they say, otherwise denied

104.    Admit only that the attached exhibits say what they say, otherwise denied

### Count VII – Commercial Guaranty 792 Note – Swatkowski

105.    Admit for jurisdictional purposes only

106.    The Defendants restate their responses to paragraphs 1 through 78

107.    Admit only that the attached exhibits say what they say, otherwise denied

108.    Admit only that the attached exhibits say what they say, otherwise denied

## Count VIII – Commercial Guaranty 792 Note – Central S&M

109.    Admit for jurisdictional purposes only

110.    The Defendants restate their responses to paragraphs 1 through 78

111.    Admit only that the attached exhibits say what they say, otherwise denied

112.    Admit only that the attached exhibits say what they say, otherwise denied

## Count IX – Commercial Guaranty 793 Note – Swatkowski

113.    Admit for jurisdictional purposes only

114.    The Defendants restate their responses to paragraphs 1 through 78

115.    Admit only that the attached exhibits say what they say, otherwise denied

116.    Admit only that the attached exhibits say what they say, otherwise denied

## Count X – Commercial Guaranty 793 Note – Central S&M

117.    Admit for jurisdictional purposes only

118.    The Defendants restate their responses to paragraphs 1 through 78

119.    Admit only that the attached exhibits say what they say, otherwise denied

120.    Admit only that the attached exhibits say what they say, otherwise denied

## Count XI – Commercial Guaranty 901 Note – Swatkowski

121.    Admit for jurisdictional purposes only

122.    The Defendants restate their responses to paragraphs 1 through 78

123.    Admit only that the attached exhibits say what they say, otherwise denied

124.    Admit only that the attached exhibits say what they say, otherwise denied

<u>Count XII – Commercial Guaranty 901 Note – Central Sweeping</u>

125.    Admit for jurisdictional purposes only

126.    The Defendants restate their responses to paragraphs 1 through 78

127.    Admit only that the attached exhibits say what they say, otherwise denied

128.    Admit only that the attached exhibits say what they say, otherwise denied

<u>Count XIII – Commercial Guaranty 1128 Note – Swatkowski</u>

129.    Admit for jurisdictional purposes only

130.    The Defendants restate their responses to paragraphs 1 through 78

131.    Admit only that the attached exhibits say what they say, otherwise denied

132.    Admit only that the attached exhibits say what they say, otherwise denied

<u>Count XIV – Commercial Guaranty 1128 Note – Central Sweeping</u>

133.    Admit for jurisdictional purposes only

134.    The Defendants restate their responses to paragraphs 1 through 78

135.    Admit only that the attached exhibits say what they say, otherwise denied

136.    Admit only that the attached exhibits say what they say, otherwise denied

<u>Count XV – Commercial Guaranty 1128 Note – Central S&M</u>

137.    Admit for jurisdictional purposes only

138.    The Defendants restate their responses to paragraphs 1 through 78

139.    Admit only that the attached exhibits say what they say, otherwise denied

140.    Admit only that the attached exhibits say what they say, otherwise denied

## Count XVI – Foreclosure of Security Agreement

141.    Admit for jurisdictional purposes only

142.    The Defendants restate their responses to paragraphs 1 through 78

143.    Admit only that the attached exhibits say what they say, otherwise denied

144.    Admit only that the attached exhibits say what they say, otherwise denied

145.    Admit only that the attached exhibits say what they say, otherwise denied

## Count XVII – Replevin

146.    Admit for jurisdictional purposes only

147.    The Defendants restate their responses to paragraphs 1 through 78

148.    Admit only that the attached exhibits say what they say, otherwise denied

149.    Admit in part, but deny to extent Plaintiff seized collateral prior to filing

Complaint

150.    Admit in part, otherwise without knowledge therefore denied

151.    Admit only that the attached exhibits say what they say, otherwise denied

152.    Denied

153.    Denied. Plaintiff seized collateral prior to filing Complaint

154.    Admit only that some payments have not been made, otherwise denied

## Affirmative Defense

155.    <u>Payment</u>. Prior to filing this action, the Plaintiff seized some assets from the

Defendants. The Defendants are entitled to an offset against any debt balance equal to the

value of said assets. The Defendants demand strict proof of sums owed.

/s/Roman V. Hammes
Roman V. Hammes
Florida Bar No. 87250
Roman V. Hammes, P.L.
250 East Colonial Drive Suite 305
Orlando, FL 32801
Telephone: (407) 650-0003
Email: roman@romanvhammes.com

Attorney for Defendants

## Certificate of Service

I certify that a copy of this Answer and Affirmative Defense was served on counsel for the Plaintiff through the Florida e-filing portal on October 30, 2014.

/s/Roman V. Hammes
Roman V. Hammes

Filing # 29655339 E-Filed 07/15/2015 09:07:42 AM

IN THE CIRCUIT COURT FOR
THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY,
FLORIDA

CASE NO. 2014-CA-009200-O

SEACOAST NATIONAL BANK,
as Successor in interest to BankFIRST,

    Plaintiff,

v.

CENTRAL SWEEPING SERVICE,
INC., a Florida corporation;
CENTRAL SWEEPING & MILLING,
LLC, a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, LLC,
a Florida limited liability company;
DOUGLAS S. SWATKOWSKI, individually

    Defendants.    /

## FINAL JUDGMENT OF FORECLOSURE

On July 15, 2015, this cause came before this Court upon consideration of the Plaintiff's Motion for Final Summary Judgment of Foreclosure dated March 23, 2015 (the "Motion"). The Motion seeks entry of a Final Summary Judgment of Foreclosure on the real and personal property on the Complaint initiating this action (the "Complaint") and turnover of all rents, and against the Defendants, CENTRAL SWEEPING SERVICE, INC., a Florida corporation ("Central Sweeping"); CENTRAL SWEEPING & MILLING, LLC, a Florida limited

22923343 v1



liability company ("Central S&M"); DOUGLAS S. SWATKOWSKI, LLC, a Florida limited liability company ("Swatkowski, LLC"); and DOUGLAS S. SWATKOWSKI, individually ("Swatkowski") (collectively referred to as the "Defendants").

The Court has reviewed the merits of the Motion, has heard the representations of counsel for the Plaintiff, SEACOAST NATIONAL BANK ("Plaintiff") and counsel for the Defendants, has considered the record, and has otherwise fully advised itself in the premises of this matter.

Based on the foregoing, the Court finds that there is no genuine issue of material fact with respect to matters raised in the Complaint, and that Plaintiff is therefore entitled to entry of the final judgment (the "Judgment") on the Complaint.

It is therefore

**ORDERED, ADJUDGED and DECREED** as follows:

1.    This Court has jurisdiction over the subject matter of this cause, as well as the parties to this cause, and the property located at 531 Ocoee-Apopka Road, Ocoee, FL 34761, described in the attached **Exhibit A** and the personal property described in the attached **Exhibit B**, which is the subject matter of this action (the "Property"), to the extent necessary to enter this Judgment.

22923343 v1

2

2.    Plaintiff has established by competent proof the allegations of the Complaint, and the Loan Documents (as defined in the Motion) in the aggregate amount of **$810,379.38**, copies of which were attached to the Complaint.

3.    Plaintiff is entitled to foreclosure of its lien on the Property, and said lien is prior in date and superior in dignity to the right, title, interest, claim or demand of the Defendants named herein, and all persons, firms, and/or corporations claiming by, through, under or against said Defendants, upon the property.

4.    Plaintiff is entitled to an award of its costs and attorney's fees pursuant to the terms of the Loan Documents attached to the Complaint.

5.    In awarding Plaintiff's attorneys' fees, this Court has taken into consideration the relevant guidelines set forth in Standard Guaranty insurance co. v. quanstrom, 555 So. 2d 828 (Fla. 1990), and its progeny, and specifically finds that the hours, hourly rates, and total fees of Plaintiff's counsel in this matter, as set forth in the affidavits submitted in support of Plaintiff's Motion, are reasonable pursuant to Section 687.06, *Florida Statutes*.

6.    Plaintiff is due from the Defendants, CENTRAL SWEEPING, CENTRAL S&M, SWATKOWSKI, LLC and SWATKOWSKI, the following sums under the Loan Documents:

| 792 Loan | |
|---|---|
| Principal | $116,597.62 |
| Accrued and unpaid interest on the principal sum as of February 23, 2015 | $20,929.70 |
| Late Fees | $702.98 |
| | |
| 793 Loan | |
| Principal | $114,644.17 |
| Accrued and unpaid interest on the principal sum as of February 23, 2015 | $20,577.88 |
| Late Fees | $904.77 |
| 901 Loan | |
| Principal | $16,335.69 |
| Accrued and unpaid interest on the principal sum as of February 23, 2015 | $3,161.79 |
| Late Fees | $759.00 |
| 1128 Loan | |
| Principal | $426,106.18 |
| Accrued and unpaid interest on the principal sum of as February 23, 2015 | $85,433.05 |
| Late Fees | $1,599.18 |
| **Subtotal** | **$807,752.01** |
| | |
| Plaintiff's Attorneys' fees | $17,204.00 |
| Court Costs of this Action, including foreclosure title search and service of process fees | $2,861.65 |
| Interest from February 23, 2015 through July 15, 2015 (at the default rate of $58.30 per diem) **on 792 Loan** | $8,278.60 |
| Interest from February 23, 2015 through July 15, 2015 (at the default rate of $57.32 per diem) **on 793 Loan** | $8,139.44 |
| Interest from February 23, 2015 through July 15, 2015 (at the default rate of $8.17 | $1,160.14 |

4

| per diem) **on 901 Loan** | |
|---|---|
| Interest from February 23, 2015 through July 15, 2015 (at the default rate of $213.05 per diem) **on 1128 Loan** | $30,253.10 |
| **Subtotal** | **$875,648.94** |
| **LESS:** Amount received from the sale of trucks | - $36,975.00 |
| **TOTAL SUM DUE PLAINTIFF** | **$838,673.94** |

7.      Interest accrues on said total sum due Plaintiff, from and including the date of Judgment at the rate of 4.75% per annum, as prescribed by § 55.03, *Florida Statutes*. If subsequent to the date hereof and prior to the sale, Plaintiff shall be required to advance any monies to protect its mortgage lien, then the Plaintiff or its attorneys shall so certify to the Clerk of this Court and the amounts found due to it above shall be increased by the amount of such advances, without further Order of the Court. Such advances shall include, but not be limited to, the sales fee and publication of the Notice of Foreclosure Sale, and any advances made by the Plaintiff which are proper under the terms of the Note and Mortgage.

8.      If the Judgment amount due Plaintiff, and all costs of this action accruing subsequent to this Judgment, together with interest thereon at the rate prescribed by law, are not paid within three (3) days from this date, the Clerk of the Court shall sell the property at Public Sale, on _August 19_ , 2015 at _11:00_ _a_.m. to the highest bidder for cash, except as set forth hereinafter, at

www.myorangeclerk.realforeclose.com, in accordance with § 45.031, *Florida Statutes.*

9.    Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if Plaintiff is not the purchaser of the property for sale; provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title.  If Plaintiff is the purchaser, the clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this Judgment, or such part of it as is necessary to pay the bid in full.

10.    On filing the certificate of title, the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the certificate; third, Plaintiff's attorneys' fees; fourth, the total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed above from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

11.    On filing the certificate of sale, Defendants and all persons claiming under or against Defendants since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter 720, *Florida Statutes,* if any.  Upon the filing of the certificate of title, the person named on the certificate of title shall be let into

possession of the property. If any Defendants remain in possession of the property, the clerk shall without further order of the court issue forthwith a writ of possession upon request of the person named on the certificate of title.

12.    On filing of the Certificate of Title, the Clerk shall distribute the proceeds of the sale so far as they are sufficient, by paying:

    A.    All of Plaintiff's costs;
    B.    Documentary stamps affixed to the Certificate of Title;
    C.    Plaintiff's attorneys' fees;
    D.    The total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed by law from this date to the date of the sale; and by retaining any amount remaining pending the further Order of this Court

13.    Plaintiff may assign its rights under this Judgment, including the right to credit bid at the foreclosure sale, without Order of this Court.

### NOTICE PURSUANT TO SECTION 45.031, FLORIDA STATUTES

**You are hereby notified of the following:**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

14.    Jurisdiction of this action is retained to enter further orders and judgments on other counts in the complaint that are proper, including, without limitation, a deficiency judgment. Jurisdiction of this action is further retained to

enter orders and judgments on any supplemental complaint to add an omitted party

post-judgment, known as a re-foreclosure, or to take such other actions as may be

necessary to correct any title defect with respect to the foreclosed property

DONE AND ORDERED in Chambers at Orange County, Florida, this

15th day of July, 2015.

Honorable Lisa T. Munyon
Circuit Court Judge

**IF YOU ARE A PERSON WITH A DISABILITY WHO NEEDS ANY ACCOMMODATION IN ORDER TO PARTICIPATE IN THIS PROCEEDING, YOU ARE ENTITLED, AT NO COST TO YOU, TO THE PROVISION OF CERTAIN ASSISTANCE. PLEASE CONTACT THE ADA COORDINATOR, HUMAN RESOURCES, ORANGE COUNTY COURTHOUSE, 425 N. ORANGE AVENUE, SUITE 510, ORLANDO, FLORIDA, (407) 836-2303, AT LEAST 7 DAYS BEFORE YOUR SCHEDULED COURT APPEARANCE, OR IMMEDIATELY UPON RECEIVING THIS NOTIFICATION IF THE TIME BEFORE THE SCHEDULED APPEARANCE IS LESS THAN 7 DAYS; IF YOU ARE HEARING OR VOICE IMPAIRED, CALL 711.**

22923343 v1

8

Copies to:

Jon E. Kane, Esq., Burr & Forman, LLP, 200 S. Orange Ave., Suite 800, Orlando, FL 32801 (jkane@burr.com) *Attorneys for Plaintiff*

Roman V. Hammes, Esq., 250 East Colonial Drive, Suite 305, Orlando, FL 32801 (roman@romanvhammes.com) *Attorney for Defendants*

## EXHIBIT A

## REAL PROPERTY DESCRIPTION

That portion of the Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida being described as follows:

Commence at the Southeast corner of the Southeast ¼ of the Southwest ¼ of Section 7; thence run South 88° 46' 40" West along the South line of said Southeast ¼ of the Southwest ¼, 17.91 feet to the West right of way line of County Road 437 for the Point of Beginning; thence continue along said South line South 88° 46' 40" West, 706.54 feet to the centerline of a drainage ditch as described in Official Records Book 972, Page 471, Public Records of Orange County, Florida; thence run the following three (3) courses along said centerline; North 02° 18' 42" West 39.20 feet; North 07° 32' 18" East, 158.30 feet; North 13° 27' 12" West, 18.92 feet to the North line of the West 633.44 feet of South 213.84 feet of the aforesaid Southeast ¼ of the Southwest ¼; thence run North 88° 46' 40" East along said North line, 53.59 feet to a line 660.00 feet West of the East line of said Southeast ¼ of the Southwest ¼ when measured along the South line of said Southeast ¼ of the Southwest ¼; thence run North 01° 04' 14" East along said line, 172.75 feet to a line 389.76 feet North of the South line of said Southeast ¼ of the Southwest ¼, when measured along the East line of said Southeast ¼ of the Southwest ¼; thence run North 88° 46' 40" East along said line, 134.31 feet to the centerline of a drainage ditch; thence run the following (5) courses along said centerline South 74° 16' 48" East, 203.54 feet; South 72° 24' 41" East, 103.49 feet; South 70° 11' 22" East, 111.56 feet; South 77° 11' 12" East, 94.07 feet; North 84° 49' 41" East, 8.83 feet to the West right of way line of County Road 437; thence run South 00° 05' 46" East along said West right of way line, 231.57 feet to the Point of Beginning.

*The aforesaid parcel of land having been historically described as follows:*

Begin at the Southeast corner of Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida run North 5.86 chains, West 10 chains, South 5.86 Chains, East 10 Chains, less that portion lying Northerly of the center line of a

ditch more fully described as: begin at a point 386.76 feet North of the said Southeast corner, run South 87° 39' West 517.75 feet; thence run Southeasterly along the center line of a ditch to a point on the East line of the aforesaid Southeast ¼ Southwest ¼ 153.48 feet South from Point of Beginning, thence run North 153.48 to a Point of Beginning and less road right-of-way on East.

That part of the East 583.44 feet of the West 633.44 feet of the South 213.84 feet of the Southeast ¼ of the Southwest ¼ of Section 7, Township 22 South, Range 28 East, Orange County, Florida lying East of the centerline of the State of Florida Drainage Easement as described in the instrument recorded in Official Records Book 1004, Page 749, of the Public Records of Orange County, Florida; the said centerline of the drainage ditch traversing said Parcel being as follows: Beginning on the South line of the above described Parcel 65.20 Feet West of the Southeast corner run North 2° 18' 42" West 39.20 Feet, thence North 7° 32' 18" East 158.30 Feet, thence North 13° 27' 12" West 18.27 feet to a point on the North line of the above described Parcel 54.38 feet West of its Northeast corner.

Parcel No. 07-22-28-0000-00019

Located at: 531 Ocoee-Apopka Road, Ocoee, FL 34761

## EXHIBIT B

## PERSONAL PROPERTY DESCRIPTION

2007 Freightliner Truck (VIN 1FVACXCS17HX87574)
2007 Freightliner Truck (VIN 1FVACXCS37HX87575)
2007 Freightliner Truck (VIN 1FVACXCS47HX58280)
2006 GMC TK (VIN J8DB4B16067024096)
2003 Sterling TK (VIN 49HAADBV93DK21061)
2003 Sterling TK (VIN 49HAADBV03DK21062)
2000 GMC Truck (VIN J8DE5B146Y7900097)
2006 Chevy Truck (VIN 1GBE5C1286F408331)
2007 International SS (VIN 1HTMPAFN47H390847)

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles, including specifically, but not limited to one 2009 SM80CT Trailer Sweeper Serial No. 909018, together with all substitutions and replacements thereto, all accessories added to or used in connection with such equipment.

All Inventory, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral Section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has

damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantors' right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

DOC # 20140567542 B: 10831 P: 2191
11/06/2014 08:38 AM  Page 1 of 1
Rec Fee: $10.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

PREPARED BY & RETURN TO:
Odalys M. Ibrahim, Esq.
Ocean Title and Escrow Company
11200 Pines Boulevard
Pembroke Pines, Florida 33026

## NON-IDENTITY AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared **Douglas Swatkowski**, who upon being first sworn according to law, deposes and says:

(1) That this affidavit is given to induce Ocean Title and Escrow Company to insure title to the property legally described as follows:

*Lot 9 LAKE BUTLER ESTATES, according to the Plat thereof, as recorded in Plat Book 10 Page 47 and 48 of the Public Records of Orange County, Florida*

(2) That affiant, **Douglas Swatkowski**, is aware that there are many judgments, orders, tax liens and decrees for money filed against similar name in the Public Records, but that affiant has no personal knowledge of any claims filed against her name.

FURTHER AFFIANT SAYETH NAUGHT

Witness
Printed Witness Name  Nory Melendez

Witness
Printed Witness Name  Duane Clarkson

Douglas Swatkowski

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this 3rd day of November, 2014, by Douglas Swatkowski, who is personally known by me or who have produced A Driver's Lic as identification.

[Notary Seal]

Notary Public
Printed name  Duane Clarkson

DUANE CLARKSON
Notary Public - State of Florida
My Comm. Expires Nov 8, 2017
Commission # FF 037117

File No: 14-2855

EXHIBIT
F